*Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). This quotation is most appropriate in this case.

ADOLPH COORS CO., et al., Plaintiffs,

v.

Howard WALLACE, et al., Defendants.

No. C–82–0656 SW.

United States District Court,
N.D. California.

June 8, 1983.

Littler, Mendelson, Fastiff & Tichy, P.C., San Francisco, Cal., Bradley, Campbell & Carney, P.C., Golden, Colo., for plaintiffs.

Fred H. Altshuler, Marsha S. Berzon, Altshuler & Berzon, San Francisco, Cal., for defendants Howard Wallace, Northern California Chapter of AFL–CIO Coors Boycott Committee and A. David Sickler.

Margaret C. Crosby, Alan L. Schlosser, Amitai Schwartz, American Civil Liberties Union Foundation of Northern California, Inc., San Francisco, Cal., Arthur Brunwasser, San Francisco, Cal., for defendant Solidarity.

## ORDER AND MEMORANDUM

SPENCER WILLIAMS, District Judge.

On February 23, 1983, this Court heard oral argument on defendant Solidarity's motion to review Magistrate Woodruff's order of January 13, 1983, compelling certain of plaintiffs' interrogatories be answered by defendant, and awarding attorneys' fees of $5291.00. We conclude that the Magistrate's order failed to address several crucial considerations in determining the appropriateness of Plaintiffs' discovery re-

quests, and hereby REMAND the matter for consideration consistent with the principles herein discussed. Further, the Court finds sanctions awarded plaintiffs under Fed.R.Civ.P. 37 inappropriate, in light of the serious constitutional issues framed by Solidarity's appeal and hereby order that no attorneys' fees be permitted either party in connection with the prior motion to compel before Magistrate Woodruff.

## BACKGROUND

This lawsuit arose from the cancellation of a contract between plaintiffs and KQED, a public television station in the San Francisco Bay Area. The contract provided that Coors, a rapidly growing regional brewery, would subsidize the full cost of one day of a three day annual "teleauction" to raise funds and public support for KQED's broadcasting activities.

Plaintiffs allege that Howard Wallace individually, as well as on behalf of the other defendants, met with KQED officials and dissuaded the station from fulfilling its contractual obligations. Plaintiffs claim damages in the amount of $13,000, representing the fair market value of lost promotional and advertising opportunity.

Defendant Solidarity is a political organization comprised exclusively of gay men and lesbian women. Howard Wallace is an avowed member of the organization and admits being the head of the Northern California Boycott Committee—a group distinct from Solidarity—whose raison d'etre is to exert pressure upon plaintiffs to modify their political positions. Solidarity claims that its only connections to this suit are: (1) that a "Boycott Coors" message was printed on the back of a Solidarity flyer; and, (2) that Wallace was a member of Solidarity. It denies taking part in any action to prevent KQED's performance of its contractual obligations to the plaintiffs.

Plaintiffs filed interrogatories in the course of this suit seeking, inter alia, the names of Solidarity's members, the sources of its financial support and the scope of its activities. Solidarity answered the majority of questions propounded, but objected to those seeking information it felt "chilled" its associational privacy or freedom of political expression.

In an attempt to reconcile plaintiffs' right to civil discovery in connection with its complaint with defendant Solidarity's concern for its First Amendment rights, Solidarity proposed a stipulation suggesting modifications of certain questions to render them unobjectionable, and offering answers to these reformulated questions. This offer was to be in exchange for plaintiffs' promise to confine these answers to counsel and to stipulate that defendant Solidarity's constitutional privilege had in no manner been "waived" by its answers. Plaintiffs refused this offer and chose to pursue a motion to compel answers for the questions as originally propounded.

Following the hearing on December 1, 1982, Magistrate Woodruff ordered: (1) Solidarity to answer plaintiffs' interrogatories, as modified by the proposed stipulation; (2) the information confined to the parties and their counsel, as Solidarity had proposed; and, (3) Solidarity had not waived any future constitutional claims of privilege during the course of this litigation. However, the Magistrate held, without permitting any oral argument on the matter, that Solidarity's assertion of constitutional privilege, objecting to the interrogatories was "not substantially justified", and imposed penalties upon it, under Fed.R. Civ.P. 37(c), in the amount of $6291 [1].

## STANDARD OF REVIEW:

28 U.S.C. § 636(b)(1), establishes two different standards for review of magistral decisions appealed to this Court. The first, 28 U.S.C. § 636(b)(1)(B) provides for *de novo* review of findings on specifically enumerated types of dispositive motions.[2] The

---

1. Magistrate Woodruff's Order, December 1, 1982, ¶ 4. The amount of costs awarded was later modified to $5291.00, by order filed January 13, 1983.

2. 28 U.S.C. § 636(b)(1) provides, in pertinent part:

    Notwithstanding any provision of law to the contrary—(A) a judge may designate a magistrate to hear and any pretrial matter pend-

other, 28 U.S.C. § 636(b)(1)(A), provides that this Court should review the findings below to determine whether they were either "clearly erroneous or contrary to law". Since the determination of a pre-trial discovery matter is not specifically enumerated under subsection (B), our review is appropriately under § 636(b)(1)(A)'s more deferential standard.

■ Both parties appear to assume that the "clearly erroneous" language of subsection (A) is applicable to conclusions both of fact and law. Defendant contends that application of the "clearly erroneous" standard in the case at bar would violate the exclusive constitutional allocation of the judicial power of the United States vested in Article III judges[3] by permitting a non-Article III court to determine constitutional rights, while Plaintiffs assert that the requirement is met by an appellate review under this "clearly erroneous" standard. *See, e.g., U.S. v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980). Both parties appear to overlook the second aspect of § 636(b)(1)(A), which permits this Court to review the magistrate's order to the extent it may be "contrary to law". Thus, while we may review magistral findings of fact, subject only to the "clearly erroneous" standard, we may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes or case precedent. Thus, it is necessary to determine precisely

the character of the magistrate's specific findings and conclusions.

■ In the proceedings below, plaintiffs sought to compel defendant Solidarity to answer interrogatories concerning, *inter alia,* the identity of some of its members and sources of its financial backing. Defendant argued that an order to supply such information would violate its First Amendment rights of associational privacy, as developed by substantial case law[4], most recently commented upon by the Supreme Court in *NAACP v. Clairborne Hardware, et al.,* —— U.S. ——, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). In ordering defendant Solidarity to answer the outstanding interrogatories, subject to a protective order, the Magistrate rejected defendants' claims of constitutional privilege. A good-faith interjection of First Amendment privilege to a discovery request however, mandates a comprehensive balancing of the plaintiffs' need for the information sought against the defendants' constitutional interests in claiming the privilege. This balancing is of paramount importance, not only in achieving the correct result as between these parties, but also in vindicating the constitutional values which underlie this controversy for all those involved.

■ It is unclear from the Magistrate's order whether, or to what extent, he conducted such a balancing of interests.[5] A

---

ing ... except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where ... magistrate's order is clearly erroneous or contrary to law.
(B) a judge may also designate a magistrate to conduct hearing, ... on any motion excepted in subparagraph (A) ....
(C) ... judge of the court shall make a de novo determination ... (and) accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence

or recommit the matter to the magistrate with instructions.

**3.** *See, e.g., United States v. Raddatz,* 447 U.S. 667, 670, 100 S.Ct. 2406, 2409, 65 L.Ed.2d 424 (1980).

**4.** *See NAACP et al v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Gibson v. Florida Legislative Investigating Committee,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *Black Panther Party v. Smith,* 661 F.2d 1243 (D.C.Cir.1981); *Britt v. Superior Court,* 20 Cal.3d 844, 574 P.2d 766, 143 Cal.Rptr. 695 (1978).

**5.** In ruling on the Motion to Compel Discovery, the Magistrate stated: "I really can't buy the First Amendment claims. I don't find the chilling effect and I don't really see in these papers a solid basis that would support the grounds on which you [Solidarity] object to those interrog-

failure to do so is, of course, subject to plenary review by this Court. If the Magistrate actually did balance the interests, he necessarily applied a legal standard of constitutional interpretation to the facts in the case at bar. Since this involved a "mixed question of law and fact", we must also determine the appropriate standard of review for such a mixed question.

■ Although the appropriate standard of review of appeals taken from district courts' decisions of such "mixed questions" is unsettled[6], there is a crucial and determinative difference between district court appeals and magistral appeals. Magistrates are not Article III judges, and thus are not vested with the "judicial power of the United States"[7]. The Supreme Court has recently examined the permissible delegation of decision-making authority to non-Article III judicial officers, and has gleaned two significant rules of law[8], from established constitutional principles.

■ First, when Congress creates a substantive federal right, it retains substantial discretion to prescribe the manner in which controversies surrounding the exercise of that right are adjudicated. This includes the option of delegating certain historically judicial functions to a non-Article III forum. Nonetheless, such delegation is "checked" by ensuring that personal rights and liberties originating from the Constitution are provided an Article III adjudication. *Northern Pipeline Co.,* 458 U.S. at 81, 102 S.Ct. at 2877, 73 L.Ed.2d at 623.

■ Second, a non-Article III tribunal's functions must be delimited to ensure that "essential attributes" of judicial power are retained by an Article III forum. *Id.* at 81, 102 S.Ct. at 2876, 73 L.Ed.2d at 621. A magistrate's determination of the plaintiffs' right to civil discovery, notwithstanding a defendant's claim to various First Amendment rights, necessarily involves an adjudication of those Constitutional, rather than legislative, rights. To discharge our responsibility as an Article III court under these circumstances, it is necessary that we review this "mixed question of law and fact" under the same standard of deference as would apply to a "pure" question of law.

■ To summarize, if an Article III court makes a determination of a mixed question of law and fact[9], it may be reviewed under the "clearly erroneous" standard. Such deference is inappropriate however, to a non-Article III tribunal. Accordingly, magistral determinations of "mixed" questions may not be accorded such deference, insofar as they require application of constitutional standards to particular facts. As the Supreme Court has recently mandated,

> (t)he essential independence of the exercise of judicial power of the United States in the enforcement of *constitutional* rights requires that the Federal court should determine such an issue upon its own record and facts elicited before it.

*Northern Pipeline,* 458 U.S. at 82, 102 S.Ct. at 2877, 73 L.Ed.2d at 622, *emphasis in original,* quoting *Crowell v. Benson,* 285 U.S. 22, 64, 52 S.Ct. 285, 297, 76 L.Ed. 598 (1932).

The core of this litigation[10] is a two-side flyer entitled, "Fight back Against the Ul-

---

atories." Reporter's Transcript, December 1, 1982, at page 7.

6. *See Pullman-Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982).

7. Upon appellate review of magistral findings which implicate constitutional rights, "the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the (enforcement of constitutional rights)". *Crowell v. Benson,* 285 U.S. 22, 60, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932).

8. *See Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 75–81, 102 S.Ct. 2858, 2874–76, 73 L.Ed.2d 598, 618–21 (1982); *U.S. v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980).

9. Such appeals would, of course, be governed by Fed.R.Civ.P. 52(a), without contravening any Article III safeguards discussed above.

10. *See* Hill Deposition Exhibit 1 attached to Plaintiff's Opposition to application of Defendant Solidarity for Review of Magistrate's Order Compelling Discovery and Awarding Reasonable Costs and Attorney's Fees.

tra-Right: Boycott Coors Beer!". Listed below that headline are six "Whereas" propositions, citing deeds and political views attributed to Coors. The flyer resolves that Coors products should be boycotted, pursuant to a resolution it relates was "passed unanimously April 26 at the Founding Conference of the National Organization of Lesbians and Gays." Alongside a cartoon at the bottom, the "Coors Boycott Committee, AFL–CIO and Solidarity" are attributed with support, and perhaps publication of the flyer. It provides Solidarity's phone numbers and address for further information.

On the other side of the flyer, four matters of note appear. First, the flyer reprints an article detailing the planned KQED "Coors Day at the Auction" from *The San Francisco Bay Guardian,* May 20, 1981. Second, there is a short paragraph captioned: "Public TV is being 'auctioned' off to Adolph Coors Co.", urging readers to call Solidarity's previously listed number for more information. Third, the flyer asks readers to "Picket all day on Saturday, May 30th, the proposed 'Coors Day at the Auction'." Finally, the readers are entreated to "join the broadest coalition of community groups this city has ever seen", by "jam(ming) the KQED phone lines with protest!!! Phone 864–2000". Again, the missive is attributed to the "Coors Boycott Committee", at Solidarity's phone number.[11]

## LEGAL ANALYSIS:

To evaluate the plaintiffs' right to obtain discovery of the broadest range consistent with the defendant Solidarity's constitutional privilege under the First Amendment to the U.S. Constitution, the Magistrate must marshall all relevant facts and considerations put forward by both sides on behalf of their positions.

Fed.R.Civ.P. 26(b)(1) provides that, "(p)arties may obtain discovery regarding any matter, *not privileged,* which is relevant . . . .". *Emphasis added.* This would entitle the plaintiffs to the broadest scope of discovery that did not violate the sacrosanct panoply of privileges afforded all citizens—litigants of private anti-trust suits included—by the Constitution. Although not explicitly enumerated in the text of the First Amendment, the right of association and privacy of speech, assembly and petition.[12] Indeed, these rights have been provided both individuals and associations[13].

There are three classes of situations in which these rights have been challenged by discovery requests—where the government seeks information from the association, where the individual seeking information is the defendant in a civil suit, and where, as here, the plaintiff in a civil suit seeks information. Of course, the balance of considerations may differ among these cases[14], but

---

**11.** *Id.*

**12.** The First Amendment states in pertinent part: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *See, e.g., Doe v. Bolton,* 410 U.S. 179, 212 n. 4, 93 S.Ct. 739, 758 n. 4, 35 L.Ed.2d 201 (1973) (Douglas, J., concurring); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958). As to the importance of this right and the need for private exercise, see *First National Bank v. Bellotti,* 435 U.S. 765, 780, 98 S.Ct. 1407, 1417, 55 L.Ed.2d 707 (1978); *Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976).

**13.** See *Cousins v. Wigoda,* 419 U.S. 477, 487, 489, 95 S.Ct. 541, 547, 548, 42 L.Ed.2d 595 (1975); *NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963).

**14.** Although theoretical arguments have been made as to the declining burden of demonstrating "need" as one compares the identity of the party seeking the information, the most which can be concluded from a survey of the cases attempting such generically grounded analysis is that such automatic talismanic classification-based conclusion has not adequately addressed the concerns raised by the legacy of thoughtful precedents in this area. See *NAACP v. Alabama ex rel. Patterson,* 357 U.S. at 463, 78 S.Ct. at 1172, where the Supreme Court downplayed, in an obvious manner, the fact that, in the case then before it, the inquiring party was the Attorney General of the state of Alabama. *Also see NAACP v. Claiborne Hardware,* 102 S.Ct. at 3427, n. 51.

Additionally, we note that the federal rules of civil procedure, as now read in tandem with those of evidence, seem to support Appellant's interpretation of the plaintiff's right to discovery subject to *all,* state as well as federal,

the criteria by which a tribunal should adjudge this balance are nearly identical.

In cases pitting the government against a private association, the Supreme Court has required that the government's interest be demonstrated to be "compelling"[15], and bear a "substantial relation" to the disclosure sought[16]. Additionally, the government must show that the sought-after disclosure represents the "least restrictive means" for accomplishing its objectives, and will not unnecessarily sweep constitutional rights aside.[17] Finally, the Court charges us to weigh against the government's interest in disclosure the likelihood of injury to an association, or its members, if the desired information is released.[18]

■ We are persuaded, by our reading of the Supreme Court's opinion in *NAACP v. Alabama ex rel. Patterson*[19] and the California Supreme Court's pronouncement in *Britt v. Superior Court*[20], that a private litigant is entitled to as much solicitude[21] to its constitutional guarantees of freedom of associational privacy when challenged by another private party, as when challenged by a government body.[22]

This certainly does not mean that a private litigant will not be able to obtain civil discovery from another private litigant over

that party's constitutional objections. It does require that any tribunal confronted with facts and arguments similar to those presented here undertake a sensitive evaluation in three steps: (1) ascertain whether the precise material sought by discovery is truly "relevant" to the gravamen of the complaint; (2) if "relevant", the court must balance the rights and interests of each litigant, the particular circumstances of the parties to the controversy, and the public interest in overriding the private litigants' representations as to resultant injury or to unavoidable need; and, (3) a conclusion that the discovery request, as framed, is the means least inclusive and intrusive for gathering the information to which the party has been deemed entitled.

RELEVANCY

■ As the Supreme Court has ordered, "courts must consider the relevance of the information sought. The interest in disclosure will be relatively weak unless the information goes to 'the heart of the matter' (citation omitted)." *Black Panther Party,* at 1268 ("crucial to the case"). The tribunal considering a private plaintiff's discovery request should demand a heightened showing of "relevancy", once a constitutional challenge for withholding the in-

---

applicable privileges. Hence, the explicit consideration of this matter of the inquiring party's identity under California law would serve to shield privacy and associational rights as against *all* opponents equally. See *Britt,* 20 Cal.3d 844, 574 P.2d 766, 773–74 n. 3, 143 Cal.Rptr. 695.

**15.** *NAACP v. Alabama,* 357 U.S. at 464, 78 S.Ct. at 1172; *Black Panther Party,* at 1265–66.

**16.** *Id.,* at 1288. *Also see NAACP v. Alabama,* 357 U.S. at 464, 78 S.Ct. at 1172.

**17.** *International Union, UAW v. National Right to Work Legal Defense and Education Foundation, Inc.,* 590 F.2d 1139, 1152–53 (D.C.Cir. 1978).

**18.** *See, e.g., Black Panther Party v. Smith,* 661 F.2d 1243, (D.C.Cir.1981), *vacated mem. sub nom. Moore v. Black Panther Party* and *Smith v. Black Panther Party,* —— U.S. ——, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982), for the District of Columbia Circuit's emphasis that the litigant need not establish a "chill" with

certainty, merely that a showing of "some probability" of resultant harassment would suffice. *Id.* at 1267–68. Although this opinion was vacated at the plaintiff-respondent's request, to marshal and husband its dwindling resources, it is illustrative of the type of careful and multi-dimensional balancing which we feel is mandated by *NAACP v. Alabama,* 357 U.S. at 462–63, 78 S.Ct. at 1171–72. Despite its lack of precedential value, the approach taken is sound and we commend it to the Magistrate as illustrative of the thoroughness we urge.

**19.** 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

**20.** 20 Cal.3d 844, 143 Cal.Rptr. 695, 574 P.2d 766 (1978).

**21.** In *Britt,* the California Supreme Court obliterated any distinction drawn on the nature, public entity or private litigant, of the inquiring party. *Id.* at 856, 143 Cal.Rptr. 695, 574 P.2d 766.

**22.** *Id.,* n. 3.

formation has been lodged[23]. This enhanced scrutiny is appropriate since civil lawsuits could be misused as coercive devices to cripple, or subdue, vocal opponents. In this particular setting, Solidarity, avowedly an unpopular, politically directed association is threatened with virtual extinction[24] by exposure of its membership and donors to a powerful commercial adversary. Any court considering override of its objections to this disclosure should require, at a minimum, that the plaintiffs demonstrate a high degree of relevancy of the information sought.

Many courts to confront this issue of when discovery rights are to override invocation of a political association's constitutional rights have drawn distinctions based upon the position of the party opposing disclosure. In the case of plaintiffs seeking to prevent discovery by their opponents, some courts have implied a waiver of those constitutional safeguards by reason of the party's decision to instigate litigation[25]. While such a distinction is not tenable, given the facts at bar, we find such a generic distinction, although facile, as much a potential "chill" upon hallowed First Amendment freedoms by indirectly penalizing its exercise, as would be a direct assault.

BALANCING THE RESPECTIVE RIGHTS AND INTERESTS:

In "balancing" the relative interests of the parties which are at stake, the Magistrate may well require further briefing by the plaintiffs to explain precisely what information is sought, to which specific issues in the case the evidence is relevant, and whether these issues are likely to be determinative of the case. "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe the information they hope to obtain and its importance to their case with a reasonable degree of specificity." *Black Panther Party,* at 1268.

The Magistrate should also carefully evaluate the validity of defendant Solidarity's claim of the injury to be suffered by the

**23.** Of course, the party challenging discovery would need to overcome the court's scrutiny, *sua sponte* if necessary, that any claim to constitutional protection not be frivolous, or invoked in bad faith.

**24.** We note that, although Solidarity filed affidavits as to some avowed members' experience with "coming out of the closet", in various professional and social settings, the Magistrate rebuked Solidarity's attempted analogies to prejudicial treatment of members of the NAACP in the South and in the Black Panther Party in the major Northern industrial cities out of hand. We find this skepticism and curt dismissal inappropriate, in light of the substantial case law which counsels great solicitude for such claims. Indeed, if membership in the Republican Party is deemed inviolably private, as *Pollard v. Roberts,* 283 F.Supp. 248 (E.D.Ark. 1968), *aff'd per curiam,* 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968), then membership in a far less popular, and far more fragile, association should be afforded at least a similar level of protection.

Certainly, the salubrious benefit of this privacy will protect both Solidarity's membership in exercise of their burgeoning political activities, as well as shelter their sexual orientation. While this Court does not, and need not, address the hypothetical issue of what protection, if any, a *non*-political organization would be

afforded from discovery, we recognize that protecting Solidarity's members from being "plucked" involuntarily from the closet may be necessary to preserving them, as a "discrete and insular minority", within the political process. Justice Stone concluded, in a footnote which has set the tone for the Supreme Court's consideration of all threats to the exercise of minorities' constitutional rights, that the greatest solicitude should be paid to those threats aimed at suppressing an attempted exercise of political rights. Homosexuals attempting to form associations to represent their political and social beliefs, free from the fatal reprisals for their sexual orientation they anticipate in jobs or other social activities, are just such a minority. See *U.S. v. Carolene Products Co.,* 304 U.S. 144, 152–53, n. 4, 58 S.Ct. 778, 783–84, n. 4, 82 L.Ed. 1234 (1938).

**25.** See discussion of this issue in Steinman, *Privacy of Association: A Burgeoning Privilege In Civil Discovery,* 17 Harv.Civ.Rights.—Civ. Lib.L.Rev. 355, 378–86 (1982), where the author concludes, in essence, that as much harm is done to a would-be claimant's exercise of his constitutional rights of associational privacy by forcing that he choose between those rights, and prosecuting an otherwise meritorious law suit, as in the case where, as a defendant, he is not even nominally presented this Hobbesian choice.

compelled discovery.[26]  Although, as the Supreme Court has established,

> the litigant seeking protection need not prove to a certainty that its First Amendment rights will be chilled by disclosure. It need only show that there is some probability that disclosure will lead to reprisal or harassment.

*Black Panther Party,* at 1267–68, *emphasis added.*

Additional briefing from the parties which places the importance of the lawsuit to the plaintiff—*i.e.,* in terms of money judgment or equitable relief sought—in perspective with the significance of the constitutional privilege asserted here to the public, as well as to the defendant Solidarity, may be advised.[27]

LEAST RESTRICTIVE MEANS:

Finally, the Magistrate might consider whether the discovery request as currently framed is, in both substance and form, the least intrusive means and narrowest inquiry by which plaintiff could obtain the information necessary to assert his antitrust lawsuit.  The plaintiff should bear the burden of showing that no alternative sources (*i.e.,* Wallace) exist, by which it could obtain the relevant information in a less chilling manner.[28]  Additionally, the Magistrate would do well to consider, upon the defendant Solidarity's argument, whether the plaintiff has impermissible ulterior motives for its discovery requests.[29]

Since we by no means consider these matters determined by the showing thus far put forth by either party, nor deem Solidarity's assertions of constitutional privilege or "chill" so frivolous as to merit the imposition of sanctions by its refusal to comply with plaintiffs' interrogatory request, IT IS HEREBY ORDERED THAT the Magistrate's Order of December 1, 1982, as modified by Order filed January 13, 1983 is VACATED, and REMANDED for further proceedings consistent with the order above.

IT IS SO ORDERED.

---

**26.** *See, e.g., Buckley v. Valeo,* 424 U.S. 1, 76, 96 S.Ct. 612, 662, 46 L.Ed.2d 659 (1976), where the Supreme Court provided that, "unduly strict requirements of proof [of potential harassment] could impose a heavy burden" on small organizations, so they "must be allowed sufficient flexibility in the proof of injury", which

> may include, for example, specific evidence of past or present harassment of members due to their associational ties, or harassment directed against the organization itself.  A pattern of threats or specific manifestations of hostility may be sufficient.  New parties that have no history upon which to draw may be able to offer evidence of reprisals and threats directed against individuals or organizations holding similar views.

**27.** *See, e.g., Intern'l Union, UAW,* at 1147–48; *c.f., Savola v. Webster,* 644 F.2d 743 (8th Cir. 1981), where the Circuit panel did acknowledge the public interest in maintaining the names of communist party members confidential, but apparently did not feel that this interest, combined with others proffered by the plaintiffs there, outweighed the FBI's rights to discovery as a civil defendant. *Id.,* at 745–46.

**28.** *See, e.g., Savola,* at 745–746; *Britt* 20 Cal.3d at 861–62, 866, 143 Cal.Rptr. 695, 574 P.2d 766.

**29.** See *NAACP v. Alabama ex rel. Patterson,* 357 U.S. at 465, 78 S.Ct. at 1173; see *New York ex rel. Bryant v. Zimmerman,* 278 U.S. 63, 73–77, 49 S.Ct. 61, 65–66, 73 L.Ed. 184 (1928).