Michael CROWE, et al., Plaintiffs,

v.

**COUNTY OF SAN DIEGO,
et al., Defendants.**

And Related Actions

No. 99CV0241 R(RBB).

United States District Court,
S.D. California.

Jan. 2, 2003.

George W. Brewster, County Counsel, County of San Diego, San Diego, CA, for Defendant Summer Stephan.

Frederick Mumm, Davis Wright Termaine LLP, Los Angeles, CA, for CBS Broadcasting, Inc.

ORDER DENYING CBS'S OBJECTION TO MAGISTRATE JUDGE'S RULING; AFFIRMING MAGISTRATE JUDGE'S RULING ON MOTION TO COMPEL

RHOADES, District Judge.

## I. Introduction

CBS Broadcasting Inc. ("CBS"), a non-party to this action, filed an objection to Magistrate Judge Ruben Brooks' ruling compelling CBS to produce to defendant Summer Stephan the full interview of Stephan that was conducted by CBS in conjunction with the television news program "48 Hours." The issue raised by this appeal of the magistrate judge's order juxtaposes the First Amendment right to freedom of the press with the widely-accepted principle, embodied in the Federal Rules of Civil Procedure, that "litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993) (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)).

## II. Background

This case arises out of the arrest of Michael Crowe and two of his friends for the murder of Michael's sister, Stephanie Crowe. The charges against Michael Crowe and the other two boys were eventually dismissed, and this civil action brought by Michael, his friends, and their families followed.

On May 6, 1999, after the charges were dropped, CBS broadcast the story of Stephanie's murder and the arrest of the boys on the "48 Hours" program. Defendant Stephan was one of the individuals interviewed for the "48 Hours" program. Her interview lasted approximately three hours, although less than three minutes of her interview were actually aired.

After the "48 Hours" program aired, plaintiffs added defendant Stephan to the lawsuit, seeking to hold defendant Stephan liable for her aired statements. Specifically, plaintiffs allege two causes of action that are relevant here: a state law claim for defamation and a federal claim for violation of the federal Civil Rights Act of 1871, codified at 42 U.S.C. § 1983. The federal § 1983 claim is a "defamation-plus" claim.

Defendant Stephan served a subpoena on CBS seeking the videotapes of her entire interview. Defendant Stephan contends that the tapes of the entire interview are relevant to demonstrate that "(1) she made every good faith effort to answer the questions put to her with references to the public record and (2) that all of her comments were about the case before it was dismissed—that is, what happened in the past, and not what she or anyone else currently thought with respect to the murder and who did it." Defendant Summer Stephan's Opposition to Request to Set Aside Ruling p. 4: 16–20. CBS moved to quash the subpoena on the ground that the "journalist's privilege" protects such mate-

rial from disclosure in a civil proceeding. The magistrate judge denied the motion to quash, and CBS appealed the magistrate's ruling.

## III. Analysis

### A. Standard of Review

 As this is an appeal of a pretrial discovery matter, the court reviews the magistrate judge's decision compelling production to determine whether it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). *See also New York Teamsters Council Prepaid Legal Services Plan v. Primo & Centra,* 159 F.R.D. 386, 387 (N.D.N.Y.1995) (reviewing magistrate judge's order compelling discovery of alleged privileged matters under § 636(b)(1)(A)); *Hinsdale v. City of Liberal, Kan.,* 981 F.Supp. 1378, 1379 (D.Kan. 1997) (same). Section § 636(b)(1)(A) is applicable even though CBS raises a constitutionally-based privilege to production. *See Adolph Coors Co. v. Wallace,* 570 F.Supp. 202, 205 (N.D.Cal.1983) (§ 636(b)(1)(A) applies to review of magistrate judge's order compelling discovery despite assertion of a constitutional privilege). Of course, to the extent that the court reviews the magistrate judge's application of constitutional law, the court determines whether the magistrate judge's decision is "contrary to law," not merely "clearly erroneous." *See Id.* at 205.

### B. Choice of Law Issues: Fed. R.Evid. 501

 The preliminary issue that must be addressed is whether the magistrate judge erred in concluding that federal privilege law, not state privilege law, applies here. This issue is important because under California law the journalist's privilege is absolute, while under Ninth Circuit law the privilege is a qualified one.

Fed.R.Evid. 501 sets forth the rule for determining whether state or federal privilege law applies. Rule 501 provides in relevant part:

> Except as otherwise provided by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Rule 501 has been the subject of much controversy since its inception. Originally, Article V of the Preliminary Draft of the Evidence Rules as proposed by the Advisory Committee consisted of thirteen rules "designed to provide a complete system of privilege law for the federal courts." 23 CHARLES ALAN WRIGHT & KENNETH GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5421, at 648 (1980). The function of the Advisory Committee's proposed version of Rule 501 "was to abolish completely the preexisting rules of privilege, save for those that were creatures of statute or rule and those required by the Constitution; the effect was to do away with the common law rules of privilege, most of which were then reconstituted in the remaining twelve rules of the article." *Id.* Congress "completely rejected" the Advisory Committee's privilege scheme, *id.,* and adopted the current version of Rule 501, which effectively "dumped the problem" of who should be entitled to assert evidentiary privileges in federal court "back on the courts to be resolved 'in light of reason and experience.'" *Id.* at 690.

In addressing the privilege issue, the Advisory Committee and Congress were faced with a myriad of issues and problems besides the issue of whom should be entitled to assert a privilege. These included, among others, issues of federalism and the effect, if any, of the Supreme Court's decision in *Erie R.Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); the definition of the term "privilege"; whether and when state privilege laws should determine the rules of privilege in federal courts; and the tension between the right to full access to evidence in the search for the truth and the right to assert a privilege recognized by state and common law. Unfortunately, in passing the current version of Rule 501, Congress failed to satisfactorily address these issues. As a result, "[m]uch ink has been spilled" on these subjects. 23 WRIGHT & GRAHAM § 5432, at 849. To the extent that these issues are not pertinent to this case, it is enough to note that the debate goes on, and the courts, with varying degrees of success, have attempted to resolve these problems "in light of reason and experience." However, one of the issues—when state privilege law should provide the rule of privilege in a federal court—is quite pertinent here.

Based upon the language of Rule 501, state law clearly supplies the rule of decision for plaintiffs' state law defamation claim. However, the court must determine whether state law supplies the rule of decision with respect to plaintiffs' § 1983 defamation-plus claim. If it does, then it is clear from the language of Rule 501 that the court is to apply state privilege law to the issue of whether the videotapes should be produced. If state law does not supply the rule of decision with respect to plaintiffs' § 1983 defamation-plus claim, then federal privilege law would apply with respect to that claim. Where state privilege law applies with respect to one or more, but not all, of the relevant claims, it is not

clear from the face of Rule 501 whether state or federal privilege law, or both, should be applied. However, before determining how such a situation should be handled under Rule 501, it must be determined whether state law supplies the rule of decision with respect to both plaintiffs' state law claim and plaintiffs' § 1983 defamation-plus claim.

■ The argument CBS advanced before the magistrate judge is that defamation is an element of a § 1983 defamation-plus claim, and that therefore state law, not federal law, supplies the rule of decision for the defamation element of such claim. *See* Transcript of Motion Hearing, October 28, 2002 p. 17:7–15 (Exhibit A to CBS's objections to magistrate's ruling on motion to compel). CBS's argument hinges on a plausible but inaccurate reading of 501. Rule 501 provides that state privilege law applies "with respect to an element of a claim or defense as to which State law supplies the rule of decision...." CBS reads this language as requiring application of state privilege law where state law supplies the rule of decision for an *element* of the claim or defense. However, an equally plausible reading of Rule 501 is that state privilege law applies where state law supplies the rule of decision *for the claim or defense,* and review of the legislative history to Rule 501 reveals that the latter interpretation is the correct one.

■ Originally, Rule 501 read "with respect to a claim or defense as to which State law supplies the rule of decision...." The American Hospital Association suggested that the phrase "an element of" be added before the phrase "claim or defense," believing that this language broadened the scope of the proviso. *See* 23 WRIGHT & GRAHAM § 5434, at 859. The Senate Judiciary was troubled by the addition of this phrase because it believed that "[t]he question of what is an element of a

claim or defense is likely to engender considerable litigation." *Id.* (quoting Senate Report, p. 12). The specific concern was that the state law proviso would only apply "when an ultimate fact is sought to be proved (*i.e.*, when an 'element' is sought to be proved), as opposed to a mediate fact (a mediate fact is a step along the way and not an 'element')." *Id.* at 860. The Conference Report responded to this concern as follows:

> The rule in the House bill applies to *evidence* that relates to "an element of a claim or defense." If an item of proof tends to support or defeat a claim or defense, or an element of a claim or defense, *and if state law supplies the rule of decision for that claim or defense,* then state privilege law applies to that item of proof.

*Id.* at 86 (quoting Conference Report, p. 7) (emphasis added). Based on the Conference Report, it is evident that the phrase "as to which State law supplies the rule of decision" modifies the phrase "a claim or defense," not the word "element." In other words, Rule 501 is properly read as requiring application of state privilege law with respect to a claim or defense as to which State law supplies the rule of decision where the evidence sought relates to an element of that state law claim or defense. *See* 23 WRIGHT & GRAHAM § 5434, at 860–61 ("In other words, it makes no difference whether the supposedly privileged matter is direct or circumstantial evidence of *a state claim;* if it is in a line of proof that culminates in an element *of a state claim or defense,* the state rules of privilege apply.") (emphasis added). Clearly, a § 1983 claim is a federal claim as to which federal law, not state law, supplies the rule of decision. *See American Civil Liberties Union of Mississippi, Inc. v. Finch,* 638 F.2d 1336, 1342 (5th Cir.1981) (because the claims and defenses asserted related to federal § 1983 claims, under Rule 501 the court was to apply federal privilege law).

■ Moreover, even if Rule 501 is properly read as requiring the application of state privilege law where state law supplies the rule of decision with respect to an element of a claim rather than with respect to the claim itself, state law does not supply the rule of decision with respect to an element of plaintiffs' § 1983 defamation-plus claim. Admittedly, to find defendant liable for violation of § 1983 under a defamation-plus theory, the jury must necessarily find that defendant defamed plaintiffs and must necessarily look to state law in determining whether defamation occurred. Thus, CBS presents a plausible argument that state law supplies the rule of decision with respect to the defamation element of a § 1983 defamation-plus claim. In fact, the court's own research has revealed a district court case applying such reasoning in the context of a claim brought under the Federal Tort Claims Act ("FTCA"). *See, e.g., Ellis v. United States,* 922 F.Supp. 539 (D.Utah 1996). Nonetheless, CBS's argument ultimately fails, as the district court in *Tucker v. United States,* 143 F.Supp.2d 619 (S.D.W.Va.2001) is correct that the cases such as *Ellis, supra,* are "lacking in analysis and awareness regarding the legislative history behind Rule 501." *Tucker,* 143 F.Supp.2d at 624. As one leading commentator explains:

> The Justice Department objected to the House formulation of Rule 501 on the ground that it would defeat procedural uniformity in cases in which the government was a party by requiring the application of state privilege law in federal question cases where state substantive law was applied; the Department cited the example of the Federal Tort Claims Act which requires application of state substantive law. The Senate Judiciary Committee thought that the intent of the House was to make state privilege rules applicable only in

diversity cases, but that the language chosen was ill-suited for this purpose because it could be construed to require the use of state privilege where state substantive law was being employed in a federal question case. Accordingly, it proposed and the Senate adopted an amendment that would have made the privilege question turn on the jurisdictional basis for the suit.

The Conference Committee rejected the Senate amendment, but. it added an explanation of the House version of the state law proviso that responded to some of the questions raised in the Senate.

. . . . .

> In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill the interstices of gaps in federal statutory phrases, the court generally will apply federal privilege law. . . . *When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply.*

23 WRIGHT & GRAHAM § 5433, at 854–55 (quoting Conference Report, pp. 7–8) (internal footnotes omitted) (emphasis added). Clearly, a garden-variety § 1983 claim is a federal claim governed by federal law. In the context of a § 1983 defamation-plus claim, federal courts are simply absorbing state defamation law and necessarily applying that law as a matter of federal common law. This is confirmed by a leading commentator, who explains:

> [I]t is clear from the legislative history that the state law proviso has no application in civil cases in which the

substantive law being applied is found in some federal statute. *Hence the federal law of privilege governs suits under the . . . various statutes concerning civil rights . . . .*

23 WRIGHT & GRAHAM § 5433, at 856. Consequently, state law does not supply the rule of decision here, and therefore state privilege law does not apply to plaintiffs' § 1983 defamation-plus claim.

Other courts, considering the legislative history to Rule 501, have applied federal privilege law where state law was necessarily consulted in resolving the plaintiff's federal claim. *See, e.g., Tucker,* 143 F.Supp.2d at 622 ("On its face, it would seem that the obvious result in applying Rule 501 in the context of the FTCA would be that state law supplies the rule of decision. . . . However, such a literal application of Rule 501 is inconsistent with the legislative history of Rule 501, which supports a finding that Congress intended federal privilege law to apply in FTCA cases."). *See also Syposs v. United States,* 179 F.R.D. 406, 410–411 (W.D.N.Y.1998) (state privilege law does not apply where FTCA claim is being asserted); *Burrows v. Redbud Community Hosp. Dist.,* 187 F.R.D. 606, 608 (N.D.Cal.1998) (concluding that Rule 501 did not require the application of state privilege law in action brought under the federal Emergency Medial Treatment and Active Labor Act even though federal statute, like the FTCA, incorporated state law); *Menses v. United States Postal Service,* 942 F.Supp. 1320 (D.Nev.1996) (simply because the FTCA requires federal courts to look to the law of the state where the act or omission occurred to determine the government's liability does not mean that state law supplies the rule of decision for that claim for purposes of Rule 501); *Young v. United States,* 149 F.R.D. 199, 204 (S.D.Cal.1993) (federal, not state, privilege law applies to discovery and admission of evidence in

Federal Tort Claims Act cases). It is significant that all but one of these cases involved claims brought under the FTCA, because the case for applying federal privilege law is less strong in the context of a claim brought pursuant to the FTCA than one brought pursuant to the Civil Rights Act of 1871 because the FTCA specifically directs the application of state law.[1] *See* 23 WRIGHT & GRAHAM, § 5433, at 856 and 857 ("[I]t is clear from the legislative history that the state law proviso has no application in civil cases in which the substantive law being applied is found in some federal statute.... *Congressional intent is less clear when the state substantive law is being applied because Congress has explicitly directed this; for example, under the Federal Tort Claims Act....* ") (internal notes omitted) (emphasis added) (citing Conference Report pp. 7–8).

■ Finally, at oral argument before this court, CBS further contended that state law provides the rule of decision for the "plus" portion of plaintiffs' § 1983 defamation-plus claim because in determining whether plaintiffs have a property interest protectable under the Fourteenth Amendment due process clause, the court must look to state law. To understand CBS's argument, a review of § 1983 defamation-plus law is necessary.

■ Simply because a statement is defamatory does not mean that it rises to the level of a constitutional tort. *See*

*Johnson v. Barker,* 799 F.2d 1396, 1399 (9th Cir.1986). In order for a tort such as defamation "to achieve constitutional import, there must be a deprivation of a [constitutionally] protected interest." *Id.* The deprivation of a constitutionally protected interest is the "plus" portion of a § 1983 deprivation-plus claim. *See Cooper v. Dupnik,* 924 F.2d 1520, 1532 n. 22 (9th Cir.1991).[2] As the Ninth Circuit explained in *Cooper,* "[t]he 'plus' part of this test can be met by either the denial of a right specifically secured by the Bill of Rights (such as the right to free speech or counsel), or the denial of a state-created property or liberty interest such that the Fourteenth Amendment's Due Process Clause is violated." *Id.* Clearly, the "plus" element of a § 1983 defamation-plus claim is what transforms the claim into a federal one.

CBS seizes on the fact that in determining whether a plaintiff has made out the "plus" element of the claim the court may have to determine whether the plaintiff has a state-created interest.[3] *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (explaining that property interests "are not created by the Constitution" but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). From this, CBS concludes that state law provides the rule of

1. *See* 28 U.S.C. § 1346(b)(1) (providing that federal district courts have exclusive jurisdiction over actions involving civil claims for money damages brought against the United States where the claimed injury is alleged to be "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.")

2. The Ninth Circuit ultimately took *Cooper* en banc. *See Cooper v. Dupnik,* 963 F.2d 1220 (9th Cir.1992). However, the en banc opinion appears to have left intact the panel opinion regarding the plaintiff's § 1983 defamation-plus claim.

3. Of course, the other means of satisfying the "plus" portion of the test is for the plaintiff to demonstrate the denial of a right secured by the Bill of Rights. *See Cooper,* 924 F.2d at 1532 n. 22.

decision for the "plus" element of the § 1983 claim here. This argument is equally unavailing.

First, as already discussed, Rule 501 is properly read as requiring the application of state privilege law where state law supplies the rule of decision for the claim itself—not for an element of the claim— and state law does not provide the rule of decision for a federal § 1983 claim. Moreover, even if CBS's reading of Rule 501 were correct, CBS's argument misses the mark. The relevant inquiry is whether a plaintiff asserting a § 1983 defamation-plus claim has a state-created interest, *the denial of which violates the Fourteenth Amendment Due Process Clause. See Cooper,* 924 F.2d at 1532 n. 22. Where the issue is whether the plaintiff has suffered a denial of his or her rights under the Fourteenth Amendment Due Process Clause, state law clearly does not provide the rule of decision even though state law might be consulted in determining whether the plaintiff has an interest that is protected by the Fourteenth Amendment.

▬▬▬ Because state law supplies the rule of decision for plaintiff's state law defamation claim but not for plaintiff's § 1983 defamation-plus claim, the court must determine whether to apply state privilege law, federal privilege law, or both in determining whether CBS may be compelled to produce the tapes of Ms. Stephan's entire interview. As already noted, Rule 501 is silent as to which privilege law should be applied where the court has federal question jurisdiction over a claim for which federal law supplies the rule of decision and supplemental jurisdiction over a state law claim for which state law supplies the rule of decision and where the evidence sought is relevant to both claims. As one commentator has noted, there are

various approaches to resolving the issue of which privilege law should apply under such circumstances: federal privilege law can always be applied, state privilege law can always be applied, the court can attempt to apply federal privilege law to the federal claim and state privilege law to the state claim, the rule that would admit the evidence could be applied, or "[p]erhaps the best rule would be to have no rule and to resolve questions of conflicting privileges on an ad hoc basis." [4] 23 WRIGHT AND GRAHAM § 5434, at 862–3. However, "[c]ourts that have confronted this issue in the context of the discoverability of evidence have uniformly held that the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim." *Hancock v. Hobbs,* 967 F.2d 462, 466 (11th Cir.1992); *see also Virmani v. Novant Health Incorporated,* 259 F.3d 284, 286 n. 3 (4th Cir.2001); *Pearson v. Miller,* 211 F.3d 57, 66 (3d Cir.2000); *von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987). Such a position is preferred for various reasons. As the Eleventh Circuit in *Hancock* noted, rules of privilege are generally looked upon with disfavor by the federal courts. 967 F.2d at 467. In fact, the journalist's privilege was considered and rejected by the Advisory Committee. *See* 23 WRIGHT & GRAHAM § 5426, at 711. Moreover, as a practical matter, where there is no federal counterpart to a state law privilege and the issue is the disclosure of evidence in discovery, it is impossible to enforce the state law privilege while at the same time ordering the production of evidence under federal law. *See Hancock,* 967 F.2d at 467 (noting "it would be impractical to apply two different rules of privilege to the same evidence before a single jury"). In the absence of Ninth Circuit case law, the

---

4. For an in-depth analysis of the pros and cons of each approach, *see* 23 WRIGHT AND

GRAHAM § 5434, at 861–865.

court follows the well-reasoned decisions of the Second, Third, Fourth and Eleventh Circuits and holds that where state law provides the rule of decision with respect to a state law claim but federal law provides the rule of decision with respect to a claim over which the court has federal subject matter jurisdiction, federal privilege law is to be applied with respect to both claims.

## C. Federal Privilege Law—The Journalist's Privilege

 Having determined that federal privilege law trumps state privilege law in this case, the next issue is whether the interview of defendant Stephan is protected under federal privilege law. The seminal Ninth Circuit cases on the issue of the federal journalist's privilege are *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir.1993) (*"Schoen I "*) and *Shoen v. Shoen,* 48 F.3d 412 (9th Cir.1995) (*"Shoen II "*). In *Shoen I,* the Ninth Circuit affirmed its previous holding in *Farr v. Pitchess,* 522 F.2d 464 (9th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1203 (1976), that federal law provides journalists with a qualified journalist's privilege. *See Shoen I,* 5 F.3d at 1292. As the *Shoen I* court explained:

> Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest " 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.' " *Herbert v. Lando,* 441 U.S. 153, 183, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (Brennan, J., dissenting) (quoting McCormick on Evidence 152 (2d Ed.1972)).

*Shoen I,* 5 F.2d at 1292. This privilege is qualified and not absolute, and "the process of deciding whether the privilege is overcome requires that 'the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts, and a balance struck to determine where lies the paramount interest.' " *Id.* at 1292–93 (quoting *Farr,* 522 F.2d at 468). The Ninth Circuit in *Shoen II* held that where, as here, "the information sought is not confidential, a civil litigant is entitled to requested discovery notwithstanding a valid assertion of the journalist's privilege by a nonparty only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen II,* 48 F.3d at 416.

 Whether the requested material is clearly relevant will be determined first. In order to hold defendant Stephan liable for defamation-plus, the first thing that plaintiffs must demonstrate is that defendant Stephan's statements were defamatory. As the Ninth Circuit has explained, "[d]efamation actions cannot be based on snippets taken out of context." *Kaelin v. Globe Communications Corp.,* 162 F.3d 1036, 1040 (9th Cir.1998). Therefore, a defendant charged with making defamatory statements "is not responsible for the subsequent editing of his interview—he is only responsible for his comments in their full and complete form, not the sound bites they became." *Metabolife Intern., Inc. v. Wornick,* 264 F.3d 832, 837 (9th Cir.2001). Moreover, the First Amendment limits the type of speech that can be actionable as defamatory speech, and in determining whether an allegedly defamatory statement is a statement of fact or a non-actionable statement of opinion, the Ninth Circuit looks to the " 'totality of the circumstances in which [the statement] was made' including (1) the broad context of the statement, (2) the specific context and content of the statement, and (3) 'whether the statement itself is suffi-

ciently factual to be susceptible of being proved true or false.'" *Weiner v. San Diego County*, 210 F.3d 1025, 1031 (9th Cir.2000) (quoting *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995)). The tape of the interview will provide relevant information as to the context and content of defendant Stephan's statements and therefore is highly relevant to the issue of whether the statements can be deemed defamatory. Moreover, it may be that the context in which the statements were made is relevant to whether the injury to reputation allegedly suffered as a result of the statements was inflicted "in connection with" a federally protected right or whether the alleged injury to reputation "caused the denial of" a federally protected right, which plaintiffs must demonstrate in order to hold defendant Stephan liable for defamation-plus under § 1983. *See Herb Hallman Chevrolet, Inc. v. Nash–Holmes*, 169 F.3d 636, 645 (9th Cir.), *cert. denied*, 528 U.S. 870, 120 S.Ct. 171, 145 L.Ed.2d 144 (1999).

■ The next issue is whether the material requested is unavailable despite the exhaustion of reasonable alternative sources for such material. CBS contends that defendant Stephan has failed to meet this prong of the test because Cal.Civil Code § 47(d) provides a privilege for "a fair and true report in, or a communication to, a public journal" of a judicial proceeding, and therefore all defendant Stephan need do to defend against the claims asserted against her is to demonstrate that everything she stated in the broadcasted portion of the interview is contained in the public record regarding the arrest and prosecution of the plaintiffs. CBS misapplies this prong of the test. The test is not whether the requesting party has exhausted all other defenses or whether other defenses are available but rather whether the requesting party has exhausted all other sources *for the requested material.* See *Shoen II*, 48 F.3d at 416 (a civil litigant is entitled to the requested material "upon a showing that *the requested material* is: (1) unavailable despite exhaustion of all reasonable alternative sources . . . .") (emphasis added). CBS has failed to demonstrate that defendant Stephan can obtain the requested material—the entire interview— by exhausting other sources. As noted, the relevance of this material is, *inter alia,* that it puts defendant Stephan's statements in context, which context is necessary to determine whether her statements are actionable. The *only* means of determining the precise context and content of defendant Stephan's statements is to review the videotape or a transcript thereof. The context and content of defendant Stephan's statements cannot be determined by looking to the public record.[5]

■ Finally, the requested material is noncumulative. The issue is whether the *requested material* is noncumulative, not whether the defendant has other defenses that could be pursued in lieu of the defense to which the requested material is relevant. *See Shoen II*, 48 F.2d at 416. In *Shoen II*, the plaintiffs sought audio tapes and other materials of interviews with the defendant because, they contended, such

---

**5.** The court notes that one suggestion was the defendant Stephan could take the depositions of other individuals, such as camera persons, who were present at the interview. Besides the fact that the court finds that these individuals are not "available" because CBS asserts the journalist's privilege with respect to these individuals, these individuals are not reasonable alternative sources for this information given that any information they would be able to provide about the three-hour interview would be based on their memories and, therefore, it is doubtful whether these individuals could provide the specificity of detail that defendant Stephan needs in order to further her defense that the statements as broadcast did not accurately reflect her actual statements.

material was relevant to the issue of ill will. The Ninth Circuit concluded that the requested material was cumulative because during his deposition the defendant made numerous statements from which the jury could infer that the defendant harbored ill will toward the plaintiffs. Here, defendant Stephan seeks the entire videotaped interview because, she contends, it will put her statements in context and demonstrate that her statements are not actionable. CBS has failed to demonstrate that there is any other evidence that would demonstrate that the defendant Stephan's statements as aired did not accurately portray her actual statements. Accordingly, the requested material is noncumulative, and defendant Stephan has met this prong of the test.

## IV. Conclusion

Although the journalist's privilege is an important one with a revered history, the Ninth Circuit has recognized that there are times when the privilege must yield to the needs of the judicial process. Because defendant Stephan has met the three prongs of the *Shoen II* test for determining whether the journalist's privilege must yield to the needs of the judicial process, the magistrate judge correctly determined that CBS must produce the requested materials. Accordingly, CBS's objection to the magistrate judge's order is denied, and the magistrate judge's order is affirmed. CBS shall produce the requested materials on or before Monday, January 13, 2003.

**IT IS SO ORDERED.**