**Lynda Sue HANCOCK,**
**Plaintiff–Appellant,**

v.

**Richard M. HOBBS, City of Marietta,**
**Defendants–Appellees.**

**No. 90–9067.**

United States Court of Appeals,
Eleventh Circuit.

July 14, 1992.

Ralph S. Goldberg, Craig Thomas Jones, Atlanta, Ga., for plaintiff-appellant.

Terry Eugene Williams, Barnhart, O'Quinn & Williams, Atlanta, Ga., for defendants-appellees.

Before KRAVITCH and EDMONDSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

In this appeal, Lynda Sue Hancock seeks to overturn an adverse jury verdict in favor of the defendants in the United States District Court for the Northern District of Georgia. The primary issues are (1) whether the defendants' explanation for their use of peremptory strikes to exclude two black

464

prospective jurors was sufficient to overcome the plaintiff's prima facie case of intentional discrimination; (2) whether the district court erred in excluding the affidavit of an expert witness offered by the plaintiff in opposition to the motion for summary judgment of the defendant, City of Marietta ("the City"); and (3) whether it was error to admit into evidence Hancock's history of psychiatric treatment. We affirm the judgment of the district court.

## I.

On the evening of April 7, 1989, Marietta Policeman Richard M. Hobbs and a fellow officer were dispatched to investigate a burglary alarm call at a local bank. Hancock and a co-worker, employees of a janitorial service company, were cleaning the interior of the bank when the two officers arrived. The policemen saw the two women inside, identified themselves as police officers and requested admittance into the building. Hancock refused to allow them into the bank, and engaged in a confrontation with Hobbs which resulted in her being placed under arrest and charged with disorderly conduct.

After a hearing before the municipal court of the City, the judge dismissed the disorderly conduct charge against Hancock. Thereafter, she filed this action against Hobbs and the City pursuant to 42 U.S.C. § 1983 and Georgia tort law. Hancock's § 1983 cause of action sought to impose liability upon Hobbs in his individual capacity for the violation of her civil rights for arresting her without probable cause and using excessive force during the arrest.

Additionally, she filed an amended complaint alleging seven grounds of recovery against the City premised on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipal liability can be predicated upon an act implementing an official policy, or taken pursuant to a custom, which results in constitutional deprivation).[1] The amended complaint also alleged pendent state law claims against Hobbs for abuse in violation of the Georgia constitution,[2] assault and battery, false arrest, false imprisonment and malicious prosecution. It sought to hold the City liable for her state law tort claims against Hobbs under a theory of respondeat superior. The district court granted summary judgment in favor of the City on six of the seven alleged grounds of § 1983 liability, leaving for trial only the claim that the City maintained a policy of permitting officers to display or threaten deadly force. It also granted summary judgment to the City on Hancock's pendent state law causes of action after concluding that, under Georgia law, a municipality is immune from liability for the torts of its police officers committed in the discharge of their duties.

At trial, Hancock contended that she displayed her driver's license to Hobbs for his inspection during the confrontation with the officers, but informed him that her employer had instructed her not to let anyone inside a building while she was engaged in her cleaning chores. She stated that Hobbs then pulled a pistol and aimed it in her direction while threatening to blow the door down if she did not unlock it.

1. As characterized by the district court, Hancock's amended complaint charged that the City maintained:
   (1) a custom or practice which resulted in her being arrested without probable cause;
   (2) a *policy of permitting officers to display or threaten deadly force to restore order or discipline and/or prevent a suspect from fleeing;*
   (3) a policy of requiring unnecessary formality in processing citizens' complaints against police officers, thereby leading to a chilling effect on the investigation of such complaints;
   (4) a pattern of tolerating the use of excessive force by its police officers without attempting to restrain them;

   (5) a policy and practice of not screening arrests to identify instances of excessive use of force, except in those involving a firearm discharge;
   (6) a policy of not requiring psychological *testing of police officer applicants;* and
   (7) a policy of not providing psychological counseling and stress management to police officers.
   R2–35–10.

2. Ga.Const. Art. I, § 1, # XVII provides that no person shall "be abused in being arrested, while under arrest, or in prison."

This testimony was contradicted by Hobbs, who claimed that Hancock did not produce proper identification at any point and that he arrested her only after she became hysterical and began acting violently. Hancock also testified that Hobbs placed her under arrest by jerking and twisting her arms behind her back, and then forcefully slapping a pair of handcuffs onto her wrists. She related that Hobbs injured her by shoving her down onto a hard bench once they were at the station house. At the conclusion of the trial, the jury returned a verdict in favor of the defendants, finding in response to special interrogatories that (1) Hobbs had probable cause to arrest Hancock; (2) Hobbs was entitled to the affirmative defense of qualified immunity against liability for damages; (3) Hobbs did not use excessive force in arresting Hancock; and (4) Hancock was not entitled to damages. Hancock appeals from that judgment.

## II.

■ During the jury selection process, the defendants used two of their peremptory challenges to remove a black prospective juror and a black prospective alternate juror. Hancock objected, contending that the defendants had used their strikes in a racially discriminatory manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Even though the district court denied Hancock's *Batson* objection,[3] it nevertheless allowed the defendants to state the reasons for excusing the two black venirepersons. The court found that the defendants had articulated racially neutral reasons for removing the black persons from the jury pool. On appeal, Hancock challenges the defendants' stated explanations as being insufficient to overcome her prima facie case of purposeful discrimination.

■ Once a litigant has presented prima facie proof of purposeful discrimination by the opposing party's use of peremptory strikes,[4] the burden shifts to the opposition "to explain adequately the racial exclusion." *Batson,* 476 U.S. at 94, 106 S.Ct. at 1721. The party seeking to exclude the juror must articulate a fact-specific, nondiscriminatory reason for the action. *Id.* at 98, 106 S.Ct. at 1723-24. The ultimate question of whether the objecting litigant has established purposeful discrimination is one of fact for the court to decide. *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21. As with other findings of fact, the appropriate guide for review is the deferential "clearly erroneous" standard. *See id.*

■ During the voir dire, the defendants stated that they removed the black prospective venireperson from the main jury pool because she had been inattentive during the voir dire and had exhibited some inability to understand the questions posed to her.[5] Hancock urges that no evidence was elicited during voir dire which showed that the excluded black juror was any less intelligent or capable of understanding the proceedings than the white members of the panel. However, Hancock's failure to provide us with a transcript of the voir dire proceeding leaves the record barren of any indication that the defendants' proffered reason was not racially neutral. Conse-

**3.** The district court initially overruled Hancock's objection on the ground that she, a white person, lacked standing to assert the equal protection rights of the stricken black venirepersons. However, two Supreme Court cases that were decided after the trial of this action establish that a civil litigant does have standing to assert the rights of prospective jurors not of his or her own race. *See Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (jury selection process, even in civil trials, must be free of racial discrimination); *Powers v. Ohio,* 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (a defendant may object to the race-based exclusion of a juror whether or not they are of the same race).

Consequently, the district court's denial of Hancock's *Batson* objection because of lack of standing was error.

**4.** Because the defendants do not contend that Hancock failed to establish a prima facie case of discrimination, we assume without deciding that she made such a showing.

**5.** Although Hancock did not provide a transcript of the voir dire for our review, the parties are in agreement on the substance of the reasons given by the defendants to explain their use of peremptory strikes against the black jurors.

quently, we cannot say that the district court's finding that Hancock failed to establish purposeful discrimination against the prospective juror is clearly erroneous.

■ The defendants also stated that they used one peremptory strike to remove a black juror from the pool of three alternates because his unemployed status might make him more sympathetic to Hancock's claim for lost wages. Hancock urges that the prospective juror's employment status bore no relationship to the issues involved in this police misconduct case. In her complaint, though, Hancock sought compensatory damages against the defendants. One aspect of her compensatory damages was a claim for lost wages. The defendants could reasonably have concluded that an unemployed prospective juror might be more sympathetic to an award of compensation for lost wages than would an employed person. Consequently, we hold that the district court's determination that the defendants exercised their peremptory strikes in a racially neutral manner is not clearly erroneous.

### III.

Hancock next argues that the district court erroneously admitted evidence of her past psychiatric treatment for consideration by the jury. She filed a motion in limine to exclude all evidence derived from her psychiatric records or related to her prior psychiatric history, which motion was denied by the court. At trial, the defendants cross-examined her with respect to her psychiatric problems prior to her arrest by Hobbs. Hancock contends that this evidence should have been excluded because it was protected against disclosure by Georgia law,[6] or alternatively, because it was inadmissible under Fed.R.Evid. 403[7] and 404(a).[8]

■ Before reaching the merits of this assignment of error, we must decide whether state or federal privilege law applies in this case. A claim of privilege in federal court is resolved by federal common law, unless the action is a civil proceeding and the privilege is invoked "with respect to an element of a claim or defense as to which State law supplies the rule of decision...." Fed.R.Evid. 501. In that event, the privilege of a witness is determined according to the state law. The jurisdiction of the district court in this case was premised on Hancock's § 1983 causes of action. Federal common law does not recognize a psychiatrist-patient privilege. *See Whalen v. Roe,* 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 877 n. 28, 51 L.Ed.2d 64 (1977) ("The physician-patient evidentiary privilege is unknown to the common law"). However, there were also pendent state law counts to which a conflicting body of state law might provide a different rule of decision. The issue is therefore whether federal privilege law governs even though there are pendent state claims an element of which, i.e. damages, might be supported or defeated by evidence of Hancock's prior psychiatric treatment.

■ Rule 501 is not clear as to which rule of decision should be followed when the federal and state laws of privilege are in conflict. *See* 23 Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5434, at 860 (1980). Courts that have confronted this issue in the context of the discoverability of evidence have uniformly held that the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim. *E.g., von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987); *Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir.1982); *Memorial Hosp. for McHenry County v.*

---

**6.** O.C.G.A. § 24–9–21 states that "[t]here are certain admissions and communications excluded on grounds of public policy," including communications between psychiatrist and patient. O.C.G.A. § 24–9–21(5).

**7.** Under Fed.R.Evid. 403, otherwise relevant evidence "may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice...."

**8.** Fed.R.Evid. 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," subject to limited exceptions.

*Shadur,* 664 F.2d 1058, 1061 n. 3 (7th Cir. 1981). We conclude that the generalized rule is persuasive in the context of the admissibility of evidence as well. Not only are rules of privilege generally looked upon with disfavor by the federal courts, *see In re International Horizons, Inc.,* 689 F.2d 996, 1003 (11th Cir.1982), it also would be impractical to apply two different rules of privilege to the same evidence before a single jury. *Accord, Wm. T. Thompson Co.,* 671 F.2d at 104. We therefore hold that the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege.[9] Accordingly, the evidence of Hancock's prior psychiatric treatment was not privileged against disclosure.

■ There remains the question of whether the trial court erred in admitting the evidence of Hancock's prior psychiatric treatment under either Rules 403 or 404(a). The admissibility of evidence is a decision left to the trial court's broad discretion. *Murphy v. City of Flagler Beach,* 761 F.2d 622, 626 (11th Cir.1985). The evidence of Hancock's past treatment was not offered to prove her psychotic condition at the time of her arrest, but to counter her claims for damages because of mental anguish, anxiety, depression and humiliation. Thus, Rule 404(a) does not govern whether the evidence is admissible. And because Hancock placed her mental condition in issue with her claim for damages, we conclude

that the district court did not abuse its discretion in admitting her prior psychiatric treatment into evidence under Rule 403.

## IV.

■ Hancock makes five other assignments of error. The first relates to the district court's exclusion of an affidavit of an expert witness submitted by Hancock in opposition to the City's motion for summary judgment. The plaintiff filed her complaint on April 5, 1989. Before the discovery period, including a sixty-day extension, had closed on November 15, 1989, the City propounded two interrogatories concerning Hancock's intended use of expert witnesses.[10] Interrogatory Number 18 sought the opinions, and the facts upon which the opinions were based, of any expert who Hancock expected to use as a witness at trial. Hancock answered that she had not decided at that time what experts she would call, but stated that she would supplement her response to the extent required by the Federal Rules of Civil Procedure.

Hancock had actually retained an expert in the field of law enforcement, Anthony N. Potter, Jr., in September 1989.[11] However, she waited until February 23, 1990, to supplement her response to the City's Interrogatory Number 18. On that date, she filed Potter's affidavit as part of her brief in opposition to the City's motion for summary judgment. The City moved to strike Potter's affidavit on the ground that his identity had not been timely revealed in response to Interrogatory Number 18.[12]

---

9. Our holding does not derogate the fact that Rule 501 "clearly provides federal courts with the statutory power to recognize new or 'novel' evidentiary privileges." *International Horizons,* 689 F.2d at 1003 (footnote omitted). Although the courts may derive a new federal rule of privilege from state decisions, *see* Fed.R.Evid. 501 conference committee's note, they are then "applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision ... and state privilege law would not apply." *Id., cited with approval in International Horizons,* 689 F.2d at 1003 n. 15.

10. One interrogatory, Interrogatory Number 17, sought the identity of all experts she had consulted in connection with the case. She objected to this interrogatory, claiming that it was outside the scope of permissible discovery. The City did not seek to compel a response to this interrogatory.

11. Potter testified in his affidavit that Hobbs used excessive force in arresting Hancock, and that the City's failure to implement policies to guard against excessive use of force by its police officers amounted to deliberate indifference to a known law enforcement problem.

12. Under Rule 26(b)(4)(A)(i), "[a] party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to

Afterward, though, the parties submitted a proposed consent decree to the court to allow Hancock to use Potter's affidavit. Instead of approving the consent agreement, the court entertained the City's motion to strike. It found that Hancock breached her duty as required by Fed. R.Civ.P. 26(e)(1)(B) [13] to supplement her answer to Interrogatory 18 in a seasonable manner, and consequently granted the City's motion to strike Potter's affidavit. Hancock maintains that the district court erred both in withholding its approval of the parties' consent agreement, and in granting the City's motion to strike.

"The trial court ... has wide discretion in setting the limits of discovery, and its decisions will not be reversed unless a clearly erroneous principle of law is applied, or no evidence rationally supports the decision." *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (citation omitted). Rule 26(e)(1)(B) mandates that a party responding to a discovery request is under a continuing duty to make a seasonable supplementation to its original answers to any question asking for the identity of an expert witness expected to be called at trial, the subject matter on which the expert will testify and the substance of his testimony. In light of the fact that Hancock failed to disclose Potter's identity and the substance of his testimony until five months after retaining him in September 1989—and over three months after the close of an extended period of discovery—we hold that the district court did not abuse its discretion in excluding the testimony of Hancock's expert witness.

◼ Hancock's next two grounds of error deal with the district court's instructions to the jury. The validity of these assignments of error is analyzed by reviewing the jury charge as a whole to determine whether the instructions adequately explained the applicable law to the jury. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991). If it did, "no reversible error has occurred, even if an isolated clause may be inaccurate, ambiguous, incomplete, or otherwise subject to criticism." *Id.* First, Hancock claims that the district court erred by refusing to charge the jury on her pendent state law causes of action for battery and abuse at the time of her arrest. The district court concluded that Hobbs could be liable under Georgia law for battery or abuse only if he used excessive force during the arrest. It therefore gave a single instruction on excessive use of force that was intended to encompass both the federal standard for excessive use of force and the Georgia precedent for battery and abuse during arrest. The court charged the jury that:

> A person, even if he is being lawfully arrested, has a constitutional right to be free of excessive force. An officer is entitled to use such force as a reasonable person would think is required to take one arrested into custody....

Georgia law authorizes an arresting officer "to use no more force than is reasonably necessary under the circumstances ..." to effect the arrest. *Mullis v. State*, 196 Ga. 569, 577, 27 S.E.2d 91 (1943). The inquiry in a fourth amendment claim of excessive force is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them...." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Thus, both the federal and Georgia standards assess the appropriateness of the officer's use of force by asking whether he acted reasonably in making the arrest. If Hobbs acted reasonably in arresting Hancock, then he obviously could not be guilty of battery or abuse. We therefore conclude that the district court's

---

state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."

**13.** Under Rule 26(e)(1), "[a] party is under a duty seasonably to supplement [a discovery] re-

sponse with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony." Rule 26(e)(1)(B).

decision to charge the jury only on Hancock's right to be free of excessive force during arrest was not error.

Next, Hancock asserts that the district court erred by not charging the jury that she had a constitutional right to use profanity toward the arresting officer. *See City of Houston v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 2509, 96 L.Ed.2d 398 (1987) (provocative speech directed at arresting officer is protected under the first amendment unless it is "shown likely to produce a clear and present danger of a serious substantive evil"). Her complaint grows out of the trial testimony of Hobbs and his fellow arresting officer, each of whom stated that Hancock used profanity while they were taking her into custody. Hobbs also testified that he arrested Hancock because her refusal to provide identification and her violent behavior interfered with the performance of his official duties. The district court correctly instructed the jury that they could find that Hobbs had probable cause to arrest Hancock either for violation of a Marietta ordinance prohibiting disorderly conduct, or for obstructing a law enforcement officer in the discharge of his official duties. The charge as a whole did not mislead the jury as to the applicable law. Thus, omitting to instruct the jury that Hancock's use of profanity was constitutionally protected did not amount to prejudicial error because the evidence was sufficient to show that her violent behavior amounted to obstructing a police officer's performance of his duties.

Hancock also contends that the district court should not have instructed the jury on the affirmative defense of qualified immunity. She argues that qualified immunity is a question of law for the court and not an issue of fact for the jury. We do not address this assignment of error because Hancock waived it for purposes of appeal by failing to object to the qualified immunity charge before the jury began its deliberations. Fed.R.Civ.P. 51.[14] Moreover, we conclude on the basis of the answers to special interrogatories one and three that any error which the district court might have committed in instructing the jury on the issue of qualified immunity was harmless.[15]

Finally, Hancock challenges the district court's grant of partial summary judgment in favor of the City on the pendent state law claims. The court relied upon O.C.G.A. § 36–33–3,[16] which exempts municipalities from vicarious liability for the torts of their police officers. Hancock points out that this code section was amended in 1986 by O.C.G.A. § 36–33–1, which provides that the purchase of liability insurance by a municipality waives its sovereign immunity if "the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy." Even assuming that Hancock is correct as to the Georgia law, she failed to furnish the insurance policy which was allegedly purchased by the City. We therefore cannot determine whether the policy "covers an occurrence for which the defense of sovereign immunity is available," and so are unable to conclude that the City waived its immunity for any tort which may have been committed by one of its officers.

## V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**14.** Rule 51 states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

**15.** Under Fed.R.Civ.P. 61, "no error or defect in any ruling or order or in anything done or omitted by the court ... is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice."

**16.** O.C.G.A. § 36–33–3 states that "[a] municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law."