**John Kris MORRIS, Plaintiff,**

v.

**SEQUA CORPORATION, d/b/a Precoat Metals, Defendant.**

**No. 2:11–cv–0053–SLB.**

United States District Court,
N.D. Alabama,
Southern Division.

July 21, 2011.

---

**25.** *Burlington City Bd. of Educ.,* 115 F.R.D. at 190–91 (citing cases).

**26.** Opposition at 3.

**27.** Docket no. 145, filed May 2, 2011.

William M. Acker, III, Birmingham, AL, James N. Foster, Jr., Brian C. Hey, McMahon Berger, St. Louis, MO, for Defendant.

Thomas F. Talty, Thomas Talty & Associates, Birmingham, AL, for Plaintiff.

## *MEMORANDUM OPINION AND ORDER*

SHARON LOVELACE BLACKBURN, Chief Judge.

This case is currently before the court on plaintiff's Motion to Quash Defendant's Subpoenas. (Doc. 12.)[1] The case is also before the court on defendant's Motion to Compel. (Doc. 16 at 8–9.) For the reasons discussed below, the court finds that plaintiff's Motion to Quash Defendant's Subpoenas, (doc. 12), is due to be granted in part and denied in part, or is moot, and defendant's Motion to Compel, (doc. 16 at 8–9), is due to be granted.

## I. MOTION TO QUASH

Plaintiff is a former employee of defendant. (Doc. 1 ¶ 12.) Plaintiff began working for defendant in July 2007. (Doc. 1 ¶ 14.) A few years prior to his employment with defendant, plaintiff had brain surgery, and had to start taking methadone to prevent headaches and fluid build up. (*Id.* ¶ 15.) Plaintiff claims that, after taking a drug test and bringing his prescription medication to the management of defendant's company, he was told to go home until defendant's doctors cleared him for work. (*Id.* ¶¶ 20–27.) Plaintiff claims that about seven months after he was sent home, he was told by defendant that he had been terminated. (*Id.* ¶¶ 37–38.)

Plaintiff filed suit on January 5, 2011, contending he was subjected to "unlawful discriminatory practices by Sequa Corporation d/b/a Precoat Metals involving termination and other terms and conditions of employment on the basis of a perceived disability" in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. (*Id.* ¶ 1.) Plaintiff also asserts a negligence claim under Alabama law. (*Id.* at 11–13.)

On April 22, 2011, defendant served subpoenas duces tecum on fourteen nonparties by certified mail seeking plaintiff's medical records (including the results of a drug testing center), employment records, social security application, and unemployment compensation records. (Docs. 14–1 & 14–2, Redacted Subpoenas.) That same day, defendant sent plaintiff copies of the subpoenas via e-mail. (Doc. 12 ¶ 3; Doc. 18–5 at 1.) The parties do not have an agreement to accept service of documents by e-mail as required by Fed.R.Civ.P. 5(b)(2)(E). (Doc. 12 ¶ 3.) The subpoenas asked for production of documents by May 27, 2011. (Docs. 14–1 at 2, 7, 14, 21, 28, 35, 42; Doc. 14–2 at 2, 9, 16, 23, 30, 37, 42.) Plaintiff filed the Motion to Quash on April 25, 2011, arguing that the subpoenas are procedurally defective because defendant failed to give prior notice to plaintiff and that the subpoenas are not reasonably limited in scope. Although a Qualified HIPAA Protective Order, (doc. 11), was in place three days prior to the service of the non-party subpoenas, plaintiff

---

1. Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.

objects to service of some of the subpoenas because a general privacy protection order is not yet in place.[2] (Doc. 12 ¶ 7.)

Pursuant to Fed.R.Civ.P. 45(c)(3)(A), "[o]n timely motion, the issuing court must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or subjects a person to "undue burden." Pursuant to Fed.R.Civ.P. 26(b)(1), parties may obtain discovery regarding any non-privileged matter "that is relevant to any party's claim or defense." Relevant information need not be admissible at trial so long as the discovery sought "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). All discovery is subject to the limitations of Rule 26(b)(2)(C), which states that the court must limit the extent of discovery if it determines that:

(I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

## Subpoenas Issued by the District of Kansas and the District of New Jersey

Not all of the subpoenas that plaintiff seeks to quash were issued by the Northern District of Alabama. Twelve of the subpoenas duces tecum were issued by the Northern District of Alabama, one was issued by the District of Kansas, and one was issued by the District of New Jersey.

Plaintiff contends that the subpoenas to T–Mobile Wireless and Sprint Wireless are procedurally defective because they do not state the court of issuance on the face of the subpoenas and were issued by the wrong court. (Doc. 18–1 at 7–11.) Under Rule 45, every subpoena must state the court from which it issued, the title of the action, the court in which it is pending, and its civil action number. Fed.R.Civ.P. 45(a)(1)(A). Defendant's subpoenas for plaintiff's telephone records to T–Mobile Wireless and Sprint Wireless were issued by the Districts of New Jersey and Kansas, respectively. (Doc. 14–2 at 36–37, 41–42.) Contrary to plaintiff's contention, the subpoenas served on T–Mobile Wireless and Sprint Wireless state the issuing district court on the face of each subpoena as required by Rule 45(a)(1)(A). The subpoena to T–Mobile Wireless lists the issuing court as the United States District Court, District of New Jersey, (Doc. 14–2 at 36–37), while the subpoena to Sprint Wireless lists the issuing court as the United States District Court, District of Kansas (*id.* at 41–42).[3]

At oral argument, defendant withdrew its argument that plaintiffs Motion to Quash the subpoenas to T–Mobile Wireless and Sprint

---

**2.** The Qualified HIPAA Protective Order, (doc. 11), grants the parties "the right, upon compliance with the applicable discovery provisions of the Federal Rules of Civil Procedure and the orders of this court, to obtain from any health care provider, health plan, or other entity covered by the Health Insurance Portability and Accountability Act of 1996, ... any and all information relating to the past, present, or future medical condition of any individual who is a party to this action ..., as well as any and all information relating to the provision of health care to such individual and payment for the provision of such health care." (Doc. 11 at 1.) The Order also "authorizes any third-party who is provided with a subpoena requesting the production of documents or commanding attend-

ance at a deposition or trial to disclose the Protected Health Information in response to such a request or subpoena. This order is intended to authorize such disclosures under the privacy regulations issued pursuant to HIPAA. 45 C.F.R. § 164.512(e)(1)(I)." (Doc. 11 at 2.)

**3.** Plaintiff states that "the District of New Jersey and [ ] the District of Kansas ... were not identified by the Defendant on these subpoenas as required ..., and· therefore Plaintiff does not know which court allegedly issued the subpoenas...." (Doc. 18–1 ¶ 3(a).) Both New Jersey and Kansas are one-district states; therefore, the districts were properly identified on the subpoenas.

Wireless were filed in the wrong district court. The court finds that the subpoenas to T–Mobile Wireless and Sprint Wireless were issued by the proper courts. *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 2010 WL 3419420, at *2 (S.D.Fla. Aug. 27, 2010) (holding that nonparty subpoena duces tecum was properly issued by district court in Southern District of Alabama as documents were located there, even though subpoena required that documents be produced to plaintiff's counsel's office in Miami, Florida); *City of St. Petersburg v. Total Containment, Inc.*, 2008 WL 1995298, at *3 (E.D.Pa. May 5, 2008) ("[T]he geographic limitation in Rule 45(a)(2)(C) relates principally to the location *of the documents to be produced,* rather than the specified location on the subpoena."). Only the issuing court can quash or modify a subpoena. Fed. R.Civ.P. 45(c)(3).

Although the court is uncertain whether defendant's withdrawal of its opposition gives the court jurisdiction to rule on the Motion to Quash, the Motion is moot because at oral argument the parties agreed to work together with regard to the documents produced pursuant to the subpoenas to T–Mobile Wireless and Sprint Wireless.

As discussed at oral argument, the parties are **DIRECTED** to work towards an agreed upon use of the telephone records, such as a protective order restricting the use or dissemination of the records. The parties' resolution of an agreed upon use for the records will not delay production of the records.

**Prior Notice**

As to the remaining twelve third party subpoenas issued by the Northern District of Alabama, plaintiff argues that the subpoenas are procedurally defective because defendant did not give plaintiff notice of service prior to issuing them. Rule 45(b)(1) provides that:

> Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United

States or any of its officers or agencies. *If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then **before it is served,** a notice must be served on each party.*

Fed.R.Civ.P. 45(b)(1) (emphasis added). Additionally, the Advisory Committee Note to the 2007 Amendment states in pertinent part that:

> Former Rule 45(b)(1) required "prior notice" to each party of any commanded production of documents and things or inspection of premises. Courts have agreed that notice must be given "prior" to the return date, and have tended to converge on an interpretation that requires notice to the parties before the subpoena is served on the person commanded to produce or permit inspection. That interpretation is adopted in amended Rule 45(b)(1) to give clear notice of general present practice.

Fed.R.Civ.P. 45 advisory committee's note (2007 Amendment).

■ Defendant argues that "Rule 45(b)(1) requires nothing more than simultaneous notice." (Doc. 16 at 2.) Some courts have held that simultaneous notice satisfies the notice requirement of Rule 45(b)(1). *See Fla. Media, Inc. v. World Publ'ns, LLC*, 236 F.R.D. 693, 695 (M.D.Fla.2006). However, the Eleventh Circuit has not addressed the issue. This court has previously held that Rule 45(b)(1) requires more than concurrent notice. *See Burch v. P.J. Cheese, Inc.*, No. 2:09–cv–1640–SLB (N.D.Ala. Aug. 20, 2010); *see also Beach v. City of Olathe, Kan.*, 2001 WL 1098032, at *2 (D. Kan. Sept. 17, 2001) (sustaining defendants' objection under Rule 45(b)(1) to subpoena served on non-party where plaintiff had failed to provide notice prior to service). Defendant's counsel's email to plaintiff's counsel sent on April 22, 2011, states, "Attached please find subpoenas that *are being served today* via certified mail." (Doc. 18–5 at 1 (emphasis added).) This does not amount to prior notice of service.

At oral argument, at the court's request,[4] plaintiff waived the argument that the subpoenas are procedurally defective due to a lack of prior notice. Therefore, the court will address plaintiff's remaining arguments challenging the scope of the subpoenas.

**Scope of subpoenas**

1. *Medical Records*

Defendant served subpoenas on the following nine non-parties requesting copies of plaintiffs medical records: UAB Hospital (Trauma Center), Dr. William J. Lupinacci, Dr. Leon Campbell, Dr. Marc Husid, Dr. E. Carter Morris, Dr. Elliot Rampula, Dr. Michael Steven Theiss, Wellness Treatment Center, and Concentra Medical Centers. The subpoenas to each of these non-parties contain the same request:

John Kris Morris, SSN: [redacted], DOB: [redacted]:

INFORMATION TO BE RELEASED FOR THE TIME PERIOD BEGINNING January 1, 2004 THROUGH THE PRESENT:

■ ENTIRE MEDICAL RECORD (including ER records, admission and discharge summaries, dictated reports and consults, operative and procedure reports, intraoperative and procedure flow sheets, informed consents, physician orders, progress notes, flow sheets, medication and transfusion records, test results, labs, pictures, pathology reports, EKGs, fetal monitoring strips, office records, immunization records growth charts, telemetry strips, radiology and other diagnostic reports, patient instructions, discharge summary). RECORD ABSTRACT (History and physical, progress notes, lab, radiology, operative report, pathology report, consultation report and diagnostic tests).

■ RADIOLOGY AND OTHER DIAGNOSTIC IMAGING FILM, PICTURES, AND OR CD ROM (x-rays, CT scans, MRI, ultrasound, angiogram, diagnostic procedure, etc.,) unless otherwise specified.

■ ALL MEDICAL AND RELATED BILLS RELATED TO THE ABOVE REQUESTED INFORMATION

■ MEDICATION RECORDS

■ OTHER (SPECIFY CONTENT): medical and counseling records relating to treatment for emotional pain, suffering, humiliation, embarrassment, inconvenience, mental anguish, and loss of enjoyment of life.

If you do not wish to appear for deposition, you should send the responsive records to the Law Offices of William M. Acker, III, 2015 1st Avenue North, Birmingham, AL 35203 or McMahon Berger, P.C., Attorneys at Law, and/or Brian C. Hey, 2730 North Ballas Road, Suite 200, St. Louis, Missouri 63131–3039 prior to May 27, 2011.

(Doc. 14–1 at 9, 16, 23, 30, 37, 44; Doc. 14–2 at 4, 18, 32.)

■ Under Rule 45(c)(3)(A), if the medical records requested are privileged, the court must quash or modify the subpoenas served on the non-party doctors and medical facilities. Where, as in the instant case, the court's jurisdiction is premised upon a federal question with a pendent state law claim, the federal law of privilege governs the court's determination of whether the requested documents are privileged. *Hancock v. Hobbs,* 967 F.2d 462, 467 (11th Cir.1992) (per curiam).

■ The Federal Rules of Evidence do not explicitly recognize a doctor-patient privilege and there is no such privilege under federal common law. *See Whalen v. Roe,* 429 U.S. 589, 602, n. 28, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) ("physician-patient evidentiary privilege is unknown to the common law"); *Ortiz–Carballo v. Ellspermann,* 2009 WL 961131, at *3 (M.D.Fla. Apr. 7, 2009) (granting defendant's Motion to Compel medical records from plaintiffs internal medicine doctor and noting that there is no doctor-patient privilege under federal law and that the requested records were relevant to the case); *see also Jaffee v. Redmond,* 518 U.S. 1, 9–11, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (recogniz-

---

**4.** The court requested that plaintiff waive the procedural objection regarding lack of prior notice because it would cause an unnecessary delay in discovery to quash the subpoenas, require the defendant to give prior notice, and then reissue the subpoenas.

ing a federal psychotherapist-patient privilege and noting that, unlike the physician-patient relationship, the psychotherapist-patient relationship is dependent upon an atmosphere of confidence and trust). Accordingly, the court need only determine whether each set of medical records is relevant to the claims in the case.

■ In defendant's First Set of Interrogatories to Plaintiff, defendant asked plaintiff to identify "each and every physician, therapist, psychologist, health care facility, or other medical practitioner that has provided you with services in relation to your allegations set forth in your Complaint." (Doc. 16–1 at 25.) In response, plaintiff stated, "I am not sure what you mean by provided services in relation to my allegations set forth in my Complaint, but here is a list of doctors and medical facilities I have used that I know of," listing Dr. Rampula, Dr. Campbell, Dr. Husid, Dr. E. Carter Morris, Dr. Michael Steven Theiss, UAB Hospital, and UAB Trauma Center. (*Id.* at 25–28.)

UAB Hospital, Wellness Treatment Center, and Dr. Theiss treated plaintiff after a February 2009 motor vehicle accident which plaintiff claims left him disabled. (Doc. 1 ¶ 49; Doc. 18–1 at 18.) Dr. Leon Campbell and Dr. Elliot Rampula are plaintiffs treating physicians. (Doc. 18–1 at 18–19.) Dr. Marc Husid and Dr. E. Carter Morris performed brain surgery on plaintiff in 2004. (Doc. 18–1 at 17; Doc. 16–1 at 33–34.) Dr. William J. Lupinacci is the defendant's company doctor. (Doc. 18–1 at 18.) Concentra Medical Center performed drug testing services for defendant on defendant's employees. (*Id.* at 19.)

The court finds that the above-referenced non-parties who were issued a subpoena for medical records are likely to have information relevant to plaintiff's claims. The Complaint mentions plaintiff's 2004 brain surgery, (doc. 1 ¶ 15), that his prescribed medication for the brain surgery caused him to be sent home from work, (*id.* ¶ 23–27), that he was asked to take drug tests, (*id.* ¶ 20–22), that his doctor was in communication with defendant's doctor, (*id.* ¶ 28–32), and that he became disabled after a 2009 automobile accident (*id.* ¶ 49). Accordingly, medical records relevant to each of these incidents are discoverable.

■ Plaintiff acknowledges that information related to his health is relevant, but objects to the scope of the requests. (Doc. 12 ¶ 12; Doc. 18–1 at 15.) Plaintiff claims that some of the information requested by the subpoenas is "clearly not relevant" to the present action. (Doc. 12 ¶ 12.) Plaintiff also contends that defendant's request in the subpoenas for "medical and counseling records relating to treatment for ... humiliation, embarrassment, inconvenience ... and loss of enjoyment of life," is vague and ambiguous and amounts to a fishing expedition beyond the scope of the Qualified HIPAA Protective Order. (*Id.*) Defendant argues in response that such information is relevant because plaintiff claims damages in the form of loss of wages, loss of benefits, pain and suffering, mental anguish, emotional distress, embarrassment, and loss of reputation. (Doc. 16 at 3–4; *see* Doc. 1 at 11, 13.) The court agrees with defendant that this information is relevant.

■ Plaintiff claims that he has already produced many medical records related to his 2004 surgery and his use of methadone to defendant (Doc. 18–1 at 15; Doc. 18–7 at 1–7.) Plaintiff argues that the cost of plaintiff's medical bills from the 2004 surgery is irrelevant. (Doc. 18–1 at 18.) The court agrees. The subpoenas to Dr. Husid and Dr. Morris shall be modified to not require disclosure of plaintiffs medical bills.

■ Plaintiff argues that, other than the communications between Dr. Lupinacci and plaintiff's treating physician Dr. Rampula, "it appears that little of the remaining requested information [from his treating physicians and Dr. Lupinacci] has a chance of being relevant in this case." (Doc. 18–1 at 19.) The court disagrees. Medical records from plaintiff's treating physicians are highly relevant to the claims in this case, which involve plaintiff's prescription drug use, ability to work, and alleged disability resulting from a car accident. Accordingly, the court will not modify the subpoenas to Dr. Rampula and Dr. Campbell. It is unclear from the record whether Dr. Lupinacci treated plaintiff or

whether he only communicated with plaintiff's doctor, Dr. Rampula. (Doc. 18–1 at 19.) Plaintiff claims that Dr. Rampula told Dr. Lupinacci in 2008 that plaintiff could return to work without restrictions and that Dr. Lupinacci agreed. (*Id.*) Plaintiff contends, therefore, that only the communications between Dr. Rampula and Dr. Lupinacci should be discoverable. (*Id.*) If Dr. Lupinacci examined plaintiff regarding his ability to return to work, those medical records are relevant and discoverable.

■ Plaintiff notes that, while the subpoena to Concentra Medical Center requests records going back to 2004, plaintiff was not employed by defendant until 2007. (Doc. 18–1 at 19.) Plaintiff states that "Concentra did not treat the Plaintiff but only performed drug testing for the Defendant, therefore the information provided by Concentra should be limited to drug testing results, procedures, reporting, [and] communications." (*Id.*) The court agrees. The subpoena to Concentra should be modified so as only to request drug testing results, procedures, reporting, and communications and only go back to 2007.

Finally, plaintiff requests that the subpoenas to UAB Hospital, Wellness Treatment Center, and Dr. Michael Steven Theiss be modified to request only records related to his 2009 accident. (Doc. 18–1 at 18.) The court finds that all medical records from UAB Hospital, Wellness Treatment Center, and Dr. Michael Steven Theiss are reasonably calculated to lead to the discovery of admissible evidence and are therefore discoverable. Fed.R.Civ.P. 26(b)(1). The subpoenas to UAB Hospital, Wellness Treatment Center, and Dr. Michael Steven Theiss will not be modified.

### 2. *Jeffrey D. Parsons*

Defendant's subpoena to Jeffrey D. Parsons contains the following request:

John Kris Morris, SSN: [redacted], DOB: [redacted]:

John Kris Morris' employment application for employment, salary/wage information, employment history, payroll records, internal reviews, fringe benefits, vacation, health care benefits, retirement plan benefits, profit sharing benefits, pension benefits, insurance benefits, workers' compensation claims and/or benefits, anticipated raises, anticipated bonuses and other job related benefits as well as a copy of John Kris Morris' personnel file.

If you do not wish to appear for deposition, you should send the responsive records to the Law Offices of William M. Acker, III, 2015 1st Avenue North, Birmingham, AL 35203 or McMahon Berger, P.C., Attorneys at Law, and/or Brian C. Hey, 2730 North Ballas Road, Suite 200, St. Louis, Missouri 63131–3039 prior to May 27, 2011.

(Doc. 14–1 at 5.)

Jeffrey Parsons employed plaintiff after plaintiff was terminated by defendant. (Doc. 12 ¶ 16.) At oral argument, defendant withdrew its subpoena to Jeffrey Parsons. Therefore, the Motion to Quash the subpoena issued to Jeffrey Parsons is moot.

### 3. *Unemployment Compensation Records*

Defendant's subpoena asks for the following to be provided:

John Kris Morris, SSN: [redacted], DOB: [redacted], Claim date: 9–14–2008

John Kris Morris' unemployment application and unemployment file, as well as any records in your possession concerning John Kris Morris' unemployment claim.

If you do not wish to appear for deposition, you should send the responsive records to the Law Offices of William M. Acker, III, 2015 1st Avenue North, Birmingham, AL 35203 or McMahon Berger, P.C., Attorneys at Law, and/or Brian C. Hey, 2730 North Ballas Road, Suite 200, St. Louis, Missouri 63131–3039 prior to May 27, 2011.

(Doc. 14–2 at 25.)

■ Plaintiff argues that the subpoena to the Unemployment Compensation Office is "not reasonably limited in scope" and seeks discovery of personal information which is "largely irrelevant to this action." (Doc. 12 ¶ 20.) Plaintiff requests that the unemployment records be limited to those related to plaintiffs employment with defendant and requests that the court require the defendant's

unemployment records and communications regarding the plaintiff be released to plaintiff. (Doc. 18–1 at 20.) Defendant argues that plaintiff's unemployment compensation records are relevant because plaintiff alleges wrongful termination, and any unemployment benefits will offset plaintiffs lost wages and may affect his eligibility under defendant's disability policies; further, defendant argues that plaintiffs application for unemployment benefits may contain impeachment evidence regarding when plaintiff learned he was terminated. (Doc. 16 at 4–5.)

The court agrees with defendant that plaintiff's unemployment records are relevant and discoverable. The subpoena shall be modified so that it only seeks plaintiff's unemployment compensation file for the time period since 2007, when plaintiff's employment with defendant began.

### 4. *Social Security Administration*

Defendant's subpoena to the Social Security Administration seeks the following:

John Kris Morris, SSN: [redacted] DOB: [redacted]

John Kris Morris' application for disability benefits under the Social Security Act and the Social Security Act's file(s) maintained for John Kris Morris' application for disability benefits.

If you do not wish to appear for deposition, you should send the responsive records to the Law Offices of William M. Acker, III, 2015 1st Avenue North, Birmingham, AL 35203 or McMahon Berger, P.C., Attorneys at Law, and/or Brian C. Hey, 2730 North Ballas Road, Suite 200, St. Louis, Missouri 63131–3039 prior to May 27, 2011.

(Doc. 14–2 at 11.)

 Plaintiff argues that the subpoena is "not reasonably limited in scope" and seeks "personal and private information about the plaintiff which is largely irrelevant to the action." (Doc. 12 at 9–10.) Plaintiff also argues that he has already provided information about his social security application in his responses to Interrogatory Nos. 2 and 17, in which plaintiff stated that he has applied for social security disability, his claim was denied, he is reapplying, and he is not currently receiving social security benefits. (Doc. 18–1 at 22; *see* Doc. 16–1 at 3, 32, 34.) Defendant argues that the social security disability file is relevant because plaintiff alleges he is entitled to benefits under defendant's short-term and long-term disability policy, and plaintiff's "application and re-application for benefits not only affects his eligibility under Defendant's policy, but also will provide sworn statements as to Plaintiff's perception of the exact nature of his alleged disability as well as the on-set date of his alleged disability, thereby also affecting Plaintiff's claim for past and future wages." (Doc. 16 at 6.) The court agrees with defendant that plaintiff's social security application is relevant and therefore discoverable.

Accordingly, the court **ORDERS** that Plaintiff's Motion to Quash Defendant's Subpoenas, (doc. 12), is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Memorandum Opinion.

## II. MOTION TO COMPEL

 In a two-paragraph addendum to defendant's Response to Plaintiff's Motion to Quash Defendant's Subpoenas, defendant moves the court to compel Plaintiff to execute Social Security Administration Form SSA–3288. (Doc. 16 at 8.) Defendant asserts that, "[w]ithout Plaintiff's consent, the Social Security Administration may not release his file." (*Id.* at 8–9.) In plaintiff's response to Defendant's First Request of Production for Documents, plaintiff objected to defendant's request that he sign the release for his social security administration records. (Doc. 16–4 at 29–30.) Defendant's counsel certifies that he has attempted in good faith to confer with Plaintiff's counsel to resolve these discovery issues prior to filing the Motion to Compel. (Doc. 16 at 9.)

The Motion to Compel, (doc. 16), is **GRANTED.** Plaintiff is **DIRECTED** to complete Form SSA–3288 authorizing the release of his social security administration records and return it to defendant within seven days.