### In re CAPITAL ONE BANK CREDIT CARD INTEREST RATE LITIGATION.

### Civil Action No. 1:10–md–02171–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 6, 2012.

Matthew C. Klase, John Louis Lyon, G. Franklin Lemond, Jr., Edward Adam Webb, Webb, Klase & Lemond, LLC, Atlanta, GA, for Plaintiff.

H. Wayne Phears, Bryan A. Fratkin, McGuire Woods, LLP, Richmond, VA, Nancy R. Thomas, Michelle N. Comeau, Morrison & Foerster, LLP, Los Angeles, CA, for Defendant.

## *ORDER*

J. OWEN FORRESTER, Senior District Judge.

This matter is before the court on Plaintiffs' Motion to Compel [45].

## I. Background

### A. Procedural History

This multidistrict litigation and purported class action stems from Defendant Capital One's decision to raise interest rates on customers' credit card accounts in 2009. Plaintiffs allege a multitude of claims, including breach of contract; breach of implied contract; unconscionability; unjust enrichment; violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.;* declaratory judgment; violations of the California Consumers Legal Remedies Act, Cal. Civ.Code § 1750 *et seq.;* violations of California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200 *et seq.;* violations of California's False Advertising Act, Cal. Bus. & Prof.Code § 17500 *et seq.;* violations of the Kansas Consumer Protection Act, K.S.A. 50–623; and violations of the New Jersey Consumer Fraud Act, N.J. S.A. § 56:8–1 *et seq.*

On July 14, 2011, Plaintiffs filed the instant motion seeking to compel Capital One to produce a number of documents redacted or withheld on purported privilege grounds. One of the grounds asserted by Capital One for withholding documents is the bank examination privilege, and on August 7, 2012, the court advised the Office of the Comptroller of the Currency and the Board of Governors of the Federal Reserve System to file written pleadings regarding application of the privilege if the agencies so desired. On August 20 and September 6, 2012, the Office of the Comptroller of the Currency and the Board of Governors of the Federal Reserve System, respectively, filed pleadings in support of the privilege.

### B. Facts

During discovery, Capital One collected more than 430,000 electronic and paper documents from its employees, including several company lawyers, and produced to Plaintiffs

over 145,000 documents. Def.'s Resp. to Pls.' Mot. to Compel, Exh. A, ¶¶ 5, 11. On May 25, 2011, Capital One produced its privilege log, which included 9,085 entries—3,784 of which were produced in some form with redacted entries and 5,301 of which were completely withheld. The privilege claims are broken down as follows: (1) Attorney-client privilege—8,321 documents; (2) Attorney work product—805 documents; (3) Bank examination privilege—302 documents; and (4) Joint defense privilege—5 documents. With respect to 341 documents, Capital One asserts multiple privilege claims: (1) Attorney work product and attorney-client privilege—281 documents; (2) Attorney work product and bank examination privilege—5 documents; (3) Attorney-client privilege and bank examination privilege—56 documents; and (4) Attorney-client privilege and the joint defense privilege—5 documents.

After reviewing the privilege log, Plaintiffs raised some concerns with Capital One. Plaintiffs compared duplicate documents that were produced, one redacted and one not, and definitively identified an instance in which Capital One withheld non-privileged material. Capital One admitted that this particular claim of privilege was unjustified. Capital One submits that in a re-review of its privilege designations, it also caught a few technical, coding errors, where document reviewers erroneously identified a document as work product or joint defense when the document should have been marked as privileged only. Capital One maintains, however, that these "few errors" are small given the overall size of the privilege log and are not indicative of any larger problems with the privilege designations.

## C. Contentions

Plaintiffs argue that, given the large volume of the privilege log and the aforementioned disparities, it is unlikely that Capital One performed an appropriate privilege review. Plaintiffs assert seven specific challenges to the privilege log: (1) Capital One cannot now assert attorney-client protection on a number of documents that it misidentified as attorney work-product; (2) Capital One cannot claim attorney-client protection

for documents that have no recipient identified; (3) Capital One cannot claim attorney-client protection for communications in which both lawyers and non-lawyers are included because legal advice was not the primary purpose of those communications; (4) Capital One's claims of attorney-client privilege for documents "providing" or "memorializing" legal advice are overbroad; (5) Capital One cannot rely on the bank examination privilege as to materials not originating with or addressed to a government agency; (6) Capital One has not adequately asserted the joint-defense privilege; and (7) Capital One's production of redacted documents without corresponding privilege log entries in inappropriate.

Capital One responds that the size of its privilege log is appropriate given the nature of this litigation and the number of documents ultimately produced. Capital One resists each of Plaintiffs' contentions above, and the parties' arguments will be more specifically addressed below.

## II. Discussion

### A. Waiver of Attorney–Client Privilege on 48 Documents

■ On a number of documents, Capital One asserts work product protection for privilege log entries purporting to relate to the giving or receiving of legal advice. Plaintiffs argue that although these items would seem to be more appropriate for consideration within the framework of the attorney-client privilege, Capital One is barred from asserting the privilege to the extent it has not already done so.

■ Generally, when a party fails to timely and properly object to a discovery request, such objections are waived. *United Steelworkers of Am., AFL–CIO–CLC v. Ivaco,* No. 1:01–CV–0426–CAP, 2002 WL 31932875, at *4 (N.D.Ga. Jan. 13, 2003) (Pannell, J.). However, several courts have recognized that waiver of the attorney-client privilege is an extreme sanction and thus one that should be reserved for cases of unjustifiable delay, inexcusable conduct, or bad faith in responding to discovery requests. *Id.; Williams v. Taser Int'l, Inc.,* 274 F.R.D. 694, 698

(N.D.Ga.2008) (Story, J.); *Jones v. Am. Gen. Life and Accident Ins. Co.,* No. CV 101–003, 2002 WL 32073037, at *6 (S.D.Ga. Dec. 4, 2002); *In re RDM Sports Group, Inc.,* 277 B.R. 415, 424 (Bankr.N.D.Ga.2002).

Plaintiffs argue that Capital One's conduct meets this standard. On December 17, 2010, Plaintiffs filed their first motion to compel when Capital One refused to produce entire categories of relevant discovery. On March 4, 2011, this court granted in part and denied in part Plaintiffs' motion to compel. Plaintiffs complain that Capital One then proceeded to "dump" over 900,000 pages of documents on them, much of which was duplicative.

The court finds that there is sufficient evidence of bad faith in this litigation to justify waiver of the privilege as to these documents. Capital One is represented by sophisticated attorneys who are very familiar with the attorney-client and work product privileges. Yet, despite this, Capital One asserts the incorrect privilege as to a fairly large number of documents. Moreover, on March 4, 2011, the court granted in part Plaintiffs' first motion to compel, and afterwards Capital One produced over 900,000 pages of documents, much of which was duplicative, making it much more difficult for Plaintiffs' attorneys to sift through the evidence and prepare a case. The court grants Plaintiffs' motion to compel as to the 48 documents incorrectly marked as protected by the work product privilege.

### B. Attorney–Client Privilege[1]

■■■ The attorney-client privilege is the oldest privilege for confidential communications known to the common law. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). For both corporations and individuals, the privilege serves the function of promoting full and frank communications between attorneys and their clients. *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). The party invoking the privilege has the burden of proving that an attorney-client relationship existed and that the particular communications at issue were confidential. *Bogle v. McClure,* 332 F.3d 1347, 1358 (11th Cir.2003). To determine whether a particular communication was confidential and protected by the privilege, the privilege holder must prove the communication was "(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential." *United States v. Bell,* 776 F.2d 965, 971 (11th Cir.1985).

Plaintiffs attack Capital One's assertions of attorney-client privilege on several grounds. First, Plaintiffs argue Capital One should be compelled to produce all documents on the privilege log that do not list a recipient. Plaintiffs reason that without that information they have no means of evaluating Capital One's claims of privilege: Plaintiffs cannot determine (1) whether a request for information to be provided to counsel was addressed to a person who could reasonably respond to it or (2) whether a distribution of legal advice was addressed to personnel who needed to know it in order to carry it out. Second, Plaintiffs contend that Capital One's privilege assertion as to documents sent by non-lawyers to both lawyers and non-lawyers is inappropriate because the inclusion of non-lawyers on the receiving end indicates that the primary purpose of the communication was for business, rather than legal advice.

In *Bogle,* the Eleventh Circuit reviewed a district court's order compelling production of memoranda written by Fulton County Attorney June Green and addressed to William McClure, Chairman of the Board of Trustees of the Atlanta–Fulton County Public Library System, and copied to Mary Hooker, Di-

---

1. Federal Rule of Evidence 501 provides that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." FED. R. CIV. EVID. 501. "The federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is rele-

vant to a pendent state law count which may be controlled by a contrary state law privilege." *Hancock v. Hobbs,* 967 F.2d 462, 467 (11th Cir. 1992). In a case such as this, where Plaintiffs allege violations of both federal and state law, federal courts look to federal law to determine the applicable privileges. *See id.; Jenkins v. De-Kalb Cnty., Ga.,* 242 F.R.D. 652, 655 (N.D.Ga. 2007) (Thrash, J.).

rector of the Atlanta–Fulton County Public Library System. Although the memoranda provided legal advice, the Eleventh Circuit upheld their compelled production because (1) they were not designated either "privileged" or "confidential;" (2) appellants failed to present evidence regarding who, if anyone, received the memo other than McClure and Hooker; (3) appellants failed to present evidence regarding what Hooker or McClure did with the memoranda once received; and (4) appellants failed to present evidence regarding whether Hooker, McClure, or Green understood the memoranda to be confidential.

■ The court finds that Capital One's privilege log is deficient in its present form. Based upon the information provided, the court cannot properly evaluate Capital One's claims of attorney-client privilege. Capital One bears the burden of proving that the communications at issue were "(1) intended to remain confidential *and* (2) under the circumstances [ ] *reasonably* expected and understood to be confidential." *Bell,* 776 F.2d at 971. As in *Bogle,* Capital One has presented no evidence as to whether the communications at issue were designated "privileged" or "confidential" or whether the recipients, where listed, understood the communications to be confidential. Where there are no recipients listed, the court has no way of knowing whether the communications remained confidential and were distributed only to those employees who needed to know its contents and/or were authorized to act on behalf of Capital One with respect to the subject matter of the communications. *See In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.,* 632 F.Supp.2d 1370, 1380 (M.D.Ga.2009) (stating that in the corporate context the applicable standard is "whether the documents were distributed on a need to know basis or to employees that were authorized to speak or act for the company."). With regard to these documents failing to list a recipient, Plaintiffs' motion to compel is due to be granted. Where recipients are listed but non-lawyers are included on both sides of the communication, the court again does not possess the information required to ascertain whether the

employees included needed to know the contents of the communication and/or were authorized to act on the information for the company. With regard to these documents, that do have recipients listed, Capital One should come forward with additional information so that Plaintiffs, and, if necessary, the court, can better evaluate its claims of attorney-client privilege.

■ Plaintiffs next urge that Capital One's claims of privilege as to communications "providing" and/or "memorializing" legal advice are overbroad because they do not indicate whether the legal advice itself would reveal the client's confidential information. Several of the examples cited by Plaintiffs are as follows: "Draft letter prepared by in-house counsel reflecting legal advice [Capital One Legal] regarding [change-in-terms] mailings"; "Email chain from in-house counsel to in-house counsel and company employees memorializing legal advice regarding changes in [change-in-terms] notice under the Card Act and Regulation Z;" and "Email chain from company employee to in-house counsel and company employees providing information to counsel for use in the rendering of legal advice and memorializing legal advice regarding company's repricing practices." Privilege Log Entries 1914, 1945, and 1958. Plaintiffs contend that these privilege log entries do not provide sufficient detail.

■ The court does not find Plaintiffs' argument persuasive. For these entries, Capital One lists the author(s), recipient(s), dates, and descriptions such as those above. Capital One's privilege log entries are not deficient just because they describe the document as "memorializing," "providing" or "reflecting" legal advice. The subject of each communication, whether it be the change-in-terms mailings or the company's repricing practices, are listed in each entry. Additional details related to why the individual was requesting certain legal advice on the mailings, notice requirements or repricing practices may very well give away confidential information protected by the privilege. In a case with many thousands of documents supposedly protected by the attorney-client privilege, a statement explaining the nature of

the legal issue for which advice was sought is sufficient. *See In re Search Warrant Executed at Law Offices of Stephen Garea*, No. 97–4112, 1999 WL 137499, at *2 (6th Cir. Mar. 5, 1999).[2] Capital One has met that burden.

### C. Bank Examination Privilege

█ Plaintiffs also seek to compel a number of documents purportedly protected from disclosure under the bank examination privilege. These documents relate to Capital One's communications with the Office of the Comptroller of the Currency and the Board of Governors of the Federal Reserve System. The large majority of the documents appear to be internal Capital One communications that summarize and/or report on the agencies' examination findings, and are sought because they relate to Capital One's knowledge of impending regulatory changes. In an order dated August 7, 2012, the court expressed uncertainty as to the application of the privilege to internal Capital One Documents and offered the Office of the Comptroller of the Currency and the Board of Governors of the Federal Reserve System an opportunity to weigh in on the issue. The court also stated, however, that it could not say what, if any, relevance the requested documents have to Plaintiffs' causes of action. The affected agencies filed their pleadings in support of the privilege on August 20 and September 6, 2012.

Prior to discussion of the privilege, the court must determine whether the requested documents constitute, or could reasonably lead to the discovery of, admissible evidence. In the Amended Complaint, Plaintiffs allege Capital One exercised the change-in-terms contractual provision in its credit card contracts to unilaterally and dramatically increase annual percentage rates on customers'

credit card accounts. Plaintiffs contend this action was inconsistent with Capital One's marketing of its credit cards as having "low" or "fixed" rates. Plaintiffs also claim they failed to receive notice about the rate increase, or received inadequate notice of the increase. The common questions identified in the Amended Complaint relate to (1) Capital One's representations about its products; (2) whether Capital One unilaterally increased annual percentage rates; (3) whether the card agreement and applicable law allowed that increase; (4) whether Capital One misrepresented its product; (5) and whether a reasonable consumer would likely have been deceived by Capital One's representations. Amended Compl., ¶ 76. The court cannot perceive of any manner in which any of the issues in this case would be informed by documents relating to Capital One's knowledge of impending regulatory changes. The issues in this case center around Capital One's actions and whether they complied with applicable law and the parties' contractual obligations. Whether Capital One was hastily implementing the allegedly unlawful scheme to raise interest rates because of impending regulatory changes is not germane to Plaintiffs' causes of action. Presently, based upon the information before it, the court does not believe any of these documents would reasonably lead to the discovery of admissible evidence. Accordingly, the court denies Plaintiffs' motion to compel as to these documents.

### D. Joint Defense/Representation Privilege

█ Plaintiffs argue Capital One has improperly designated five documents as protected by the joint defense privilege. Capital One admits that three of these were improperly labeled as protected by the joint defense privilege.[3] Thus, only two documents are at

---

2. The court notes, however, that to the extent these documents "memorializing" and "providing" legal advice are deficient in the ways cited *immediately above, Capital One should provide* additional information regarding the documents.

3. Capital One states that privilege log entry 2547 was mistakenly listed as protected by the attorney-client privilege and the joint-defense privilege. Capital One states that it will provide this document to Plaintiffs. Plaintiffs state in re-

sponse, however, that Capital One has failed to produce the document. Capital One should promptly produce this unprivileged document. *Capital One asserts that the remaining two documents mistakenly listed as protected by the joint-defense privilege remain protected by the attorney-client privilege.* The court finds these privilege log entries sufficient to establish that the attorney-client privilege attaches because they list the author(s), recipient(s), date, and an ade-

issue: Privilege log entries 1870 and 5584. Privilege Log entry 1870 is an outline prepared by outside counsel for the MasterCard Legal Advisory Council providing legal advice regarding the CARD Act. Privilege Log Entry 5584 is a draft letter prepared by an attorney with Morrison & Foerster on behalf of several credit card issuers and intended for the Board of Governors of the Federal Reserve System. The draft letter contains a response to the CARD Act and the proposed rules promulgated under the Act. For the reasons stated above with respect to the documents purportedly protected by the bank examination privilege, the court finds that these two documents would not reasonably lead to the discovery of admissible evidence. The court denies Plaintiffs' motion to compel as to these two documents.

## III. Conclusion

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion to Compel [45].

quate description of the subject matter of the  legal advice provided.